JOHN K. PICKERING & *al. versus* PAUL LANGDON & *al.* Ex'rs.

In the construction of wills, the rule that the general intent to dispose of the whole property should prevail in preference to any particular intent, applies to cases where there is an intention exhibited to make a certain disposition of the property, and the mode of executing that intention is erroneously, defectively, or illegally prescribed in the will, and not to cases where there is a clear intention to effect another purpose, distinct and differing from the more general object.

If the testator uses language which could be employed to carry the general intent and purpose into effect, it would be the duty of the Court to make use of it to accomplish that object; but the Court is not authorized to supply omissions by adding words, even for such purpose. The testator must execute his intentions, or by the use of some language, give the Court the power to execute them, to make them effectual.

And in these respects there is no distinction between the rules as to real and personal property.

Where a clause in an original will and one in a codicil thereto are entirely inconsistent, and both cannot be executed, the latter clause must prevail.

If the devisee, or legatee, have the absolute right to dispose of the property at pleasure, a devise over of the same property is inoperative.

A testatrix made a will, wherein after giving several legacies, she used these words. " The residue of my property, after paying my just debts, I give and bequeath to P. L. and E. L. constituting them residuary legatees to all my property not otherwise disposed of, whether real or personal, for their use and benefit, and after the death of E. L. what remains of her part to be put at interest for the benefit of E. S. L. and A. P." Afterwards she made a codicil, wherein she says, " Having made and executed my last will and testament, and now thinking it fit and expedient to

make some alterations therein, additional or as amendments to my said original will. First, The one moiety or half of my estate which in said will I devised to P. L. I do by this codicil devise jointly to said P. L. and his wife A. S. L. as a life estate, to hold, possess and enjoy by them or either of them who may survive the other during his or her natural life. Second. The moiety or half of my estate which, in said original will, I devised to my niece E. L. by this codicil my will is, that after the decease of the said E. L. said moiety is to descend to E. S. L. and A. P. and W. L. G. equally."

*It was held* that, as to the one moiety, P. L. and A. S. L. took but a life estate, in the real estate, and the income only of the personal estate, and that the reversionary interest was to be considered as undevised property of the testatrix, and to be distributed to her next of kin by the statute of distributions.

Although such request was specially made in the plaintiff's bill in equity, the Court declined to appoint trustees to take charge of the property, saying, that as to the real estate the law would determine the rights of the parties and protect them, and that as to the personal property the executors themselves became trustees for those entitled.

And as it respects the other moiety, it was held, that E. L. took an estate in fee in the real estate, and an absolute right to the personal property.

On July 25, 1834, Elizabeth Sewall, widow of the late Judge David Sewall of York, made her will. This was in her own handwriting. A Copy follows: —

" I, Elizabeth Sewall of York, in the County of York and State of Maine, widow, knowing the uncertainty of life and the necessity of being prepared for death, being by the blessing of Almighty God, of a sound mind, do now direct the disposition of my property, in the manner following. viz : —

" *Imprimis.*—I give and bequeath to my nephew, Richard Langdon of Smithville, North Carolina, one thousand dollars to be appropriated to the education of his children.

" Second.—I give and bequeath unto my four nephews, William, Charles, Warren and Richard Langdon Goddard, a gold ring to each.

" Thirdly.—I give and bequeath one thousand dollars, the interest of which to be applied to the education of Elizabeth S. Langdon, the infant daughter of my nephew Paul Langdon.

" Fourthly. — I give and bequeath to my nieces, Lucy M. Pickering and Anna W. Clark, twenty-five dollars each.

"Fifthly. I give and bequeath five hundred dollars to the ministerial fund of the first Congregational Society in York.

"Sixthly.—The residue of my property, after paying my just debts, I give and bequeath to Paul Langdon, aforesaid, and Elizabeth Langdon, my niece, constituting them residuary legatees to all my property not otherwise disposed of, whether real or personal, for their use and benefit, and after the death of Elizabeth what remains of her part to be put at interest for the benefit of Elizabeth S. Langdon and Anna Pickering. And I do appoint William Goddard, Executor to this may last Will and Testament."

On July 11, 1838, she made a codicil to her will. This was in the handwriting of a gentleman, who was not of the legal profession. A copy follows.—

"I, Elizabeth Sewall of York. in the County of York, widow of Hon. David Sewall L.L. D. late of said York, deceased, having on the twenty-fifth day of July, A. D. 1834, made and executed my last will and testament; and now thinking it fit and expedient to make some alterations therein, have and do by this present codicil, which is annexed to the original, make the following alterations, additional or as amendments to my said original will.

"First.—The one moiety or half of my estate which in said will I devised to my nephew, Paul Langdon of said York, I do, by this codicil, devise jointly to my said nephew Paul Langdon, and to his wife Abigail Sarah Langdon, as a life estate, to hold, possess and enjoy by them or either of them who may survive the other during his or her natural life.

"Secondly.—The moiety or half of my estate, which, in said original will, I devised to my niece Elizabeth Langdon, by this codicil my will is, that after the decease of the said Elizabeth Langdon said moiety is to descend to Elizabeth Sewall Langdon, Anna Pickering and William L. the oldest son of William Goddard, M. D. of Portsmouth, equally.

"Thirdly. — The Portrait picture of my late husband, Hon. David Sewall, L. L. D. by this codicil, I give and bequeath to Bowdoin College.

" Fourthly. — My library I leave to the discretion of William Goddard, my Executor, to dispose of as he with the advice and consent of my heirs, named in the original will and in this codicil, shall think proper." .

On August 20, 1838, the testatrix made another codicil, in a still different handwriting, of which this is a copy.

" Whereas I, Elizabeth Sewall of York, in the County of York and State of Maine, widow, having made and executed my last will and testament and having also added a codicil thereto, do hereby make and execute this instrument as a second and additional codicil to said will, and hereby direct the same to be annexed thereto and taken as part thereof, and whereas in my first codicil abovementioned, I have used the expression " life estate" with reference to my legatees and devisees, I do hereby declare that my intention and meaning is, that the income only of my property shall be used and appropriated so far as is necessary for a comfortable support and maintenance during life, and I do hereby direct my executor to carry and put this my will and meaning into operation and execution; and secondly, I do hereby give and bequeath to William Goddard of Portsmouth, my nephew, and his heirs forever, all such sum or sums of money as may be due me from said William on notes, account or otherwise, and hereby order and direct that any and all securities which I may hold as evidence of my said nephew's indebtedness to me, immediately after my decease shall be cancelled and destroyed by my executor, and I do also hereby direct my executor to hand to my said nephew any property which he may have given me in pledge as collateral security for payment of his debts to me. I do also hereby give and bequeath to my said nephew such sums as now remain due to me on notes of hand, signed by Theodore I. Harris and John Floyd, late of Kittery."

On the next day, August 21, 1838, the testatrix made a third codicil, of which a copy follows.

" To all persons to whom these presents shall come ; Know ye, that whereas I, Elizabeth Sewall of York, in the County of York and State of Maine, widow of Hon. David Sewall, Esq.

late of said York, deceased, having some years ago and since the decease of my said husband, made and executed a certain instrument as my last will and testament, and having more recently, namely, in the month of July last past, made and executed a certain instrument purporting to be a codicil to my said original will, which said codicil was annexed to my said will, which said instruments were made with great caution and mature deliberation. And whereas on the twentieth day of August, A. D. 1838, while. I, the said Elizabeth Sewall, the said testatrix, was exercised with much bodily weakness, by the pressing importunities of Doctor William Goddard of Portsmouth, my attending physician, was induced to sign a certain instrument by him prepared, the import and bearing of which I am not fully aware, but which, as I was informed by him, the said Goddard, was merely to guard and strengthen the provisions made in the aforesaid instruments. Now be it known, that I, the said Elizabeth Sewall, do hereby revoke, annul, abrogate and make void and of no effect the aforesaid instrument made and executed on the said twentieth day of August, A. D. 1838, and do hereby ratify and confirm the said will and codicil thereto annexed aforenamed ; and I do hereby order and direct that this instrument be annexed to my aforesaid will and codicil, as codicil thereto."

Her nephew, Paul Langdon, and Doctor J. S. Putnam were made executors, instead of William Goddard.

The testatrix deceased, without making any other change in the disposition of her estate, and the original will, and the first and third codicils were duly proved and allowed, in the Probate Court, on December 3, 1838, as her last will and testament.

At the time of the death of the testatrix, she had no brother or sister living, and her heirs at law were six children of her deceased sister, Mary Goddard, of whom Dr. William Goddard and the wife of J. K. Pickering were two ; one child of her deceased brother, Samuel Langdon, being the Elizabeth Langdon named in the will ; and the seven children of her deceased brother, Paul Langdon, one of whom was Paul Langdon,

named in her will and who lived in the same house with her. Elizabeth Sewall Langdon was the daughter of her nephew, Paul Langdon; Anna Pickering was the daughter of her neice, Mrs. Pickering, and William L. Goddard, mentioned in the codicil with the two preceding, was the son of her nephew William Goddard.

The representatives of Mrs. Goddard brought their bill in equity against the executors and Elizabeth Langdon, wherein they, " as heirs at law, claim to be seized of a remainder in fee simple of that part of the real estate devised by said will and codicils to said Paul Langdon and Abigail S. Langdon as a life estate, and also that part of the personal estate given and bequeathed by said will and codicils to Paul Langdon and Abigail S. Langdon for life, and to have the same carefully preserved for them and the other heirs at law," and pray that trustees may be appointed to take care of the same; and William L. Goddard and Anna Pickering also joined as plaintiffs in the bill, claiming two thirds of the estate, real and personal, devised and bequeathed, " to said Elizabeth Langdon for life," to be placed in the hands of trustees.

The second codicil was not offered for probate, and on their refusal to produce it, a cross bill was filed by the defendants, and the Court ordered it to be produced. (19 Maine R. 214.) The amount of the estate in controversy was supposed to be about twenty thousand dollars.

*W. P. Fessenden*, for the plaintiffs, proceeded to show, that the rights and interests of all interested in the estate might be ascertained and declared by the Court. This power was conceded, for the present case, by the defendants.

Before submitting his views on the construction to be given to the will and codicils, he would state a few well recognized and familiar principles.

With regard to real estate, " where no words of limitation are added to a devise, and there are no other words from which an intention to give an estate of inheritance can be collected, the devisee will only take an estate for life." 4 Cruise, 305.

It is not so with regard to personal estate, but an opposite rule prevails. "In a devise of real estate words of limitation are required to give more than an estate for life; as are words of qualification to restrain the extent and duration of the interest in personal property.". *Adamson* v. *Armitage*, 19 Ves. 418.

Under a devise of all the real and personal *estate* of the testator, the devisee takes a fee in the realty. 13 Johns. R. 537; 16 Johns. R. 537. And the same effect is given to the words *my property.* 6 Binney, 94; 17 Johns. R. 281; 11 Johns. R. 365; 5 Burrow, 2638. It is not so where the devise is specific. 4 Kent, 540. A devise of all the remainder of a person's estate, after paying, &c. is not specific. 6 Mass. R. 149.

Chattels or money may be limited over after a life estate, but not after a gift of the absolute property. 11 Wend. 259.

There is no distinction between the devise of the use of personalty, and a devise of personalty itself. And a devise of the use of personalty, and of the personalty during life, has the same effect. 2 Kent, 352; 2 Story's Eq. § 844; 17 Pick. 183; 2 Pick. 468; 3 Metc. 187.

It follows from these principles, that whether specific personalty, or personalty generally, is given, or the use or income of such property during life, and whether the remainder is specifically devised, or not, yet that remainder at once vests, in one case in the devisee, and in the other, in the heirs at law.

The will is now to be examined. It is contended, that by the sixth clause, the whole estate is disposed of both to Paul and Elizabeth. Had the words of the devise to Elizabeth been "her part," instead of "what remains of her part," it would have been an estate for life only, with remainder to Elizabeth S. and Anna. Here the words necessarily imply a power of disposition. The words import an "absolute and uncontrolable ownership," and carry a fee. 2 Story's Eq. 1070; 4 Cruise, Tit. 38, c. 13, § 6.

The first codicil was then read, and thereupon, the counsel contended, that it was clear, that the codicil revoked the residuary clause in the will.

One universally acknowledged rule in the construction of wills is, that when two parts. of a will are wholly irreconcilable, the last is to govern. 2 Bl. Com. 381; 6 Peters, 84; 3 Metc. 202; 12 Wend. 602.

A codicil is a part and continuation of a will, and they will operate as one instrument. 1 Ves. 178, 186; 2 Atk. 86. And if estate be bequeathed in the codicil in a manner inconsistent with the first will, the last disposition will revoke the first. 1 Eq. Abr. 409. And where the intention is manifest the Court will imply the necessary words. 3 Paige, 27.

The first clause in the codicil gives an estate for life in express terms, " as a life estate," and it charges the persons by a devise to Paul and his wife, with a right of survivorship; and gives to the survivor only during his or her natural life. This is clearly inconsistent with the residuary clause.

But there is no remainder limited, and what then?

If there is not sufficient in a will to take the case out of the rule of law, that all the estate which is not legally and sufficiently devised to some other person, must go to the heir, the heir will take, whatever may have been the intention of the testator. 2 Wend. 13.

The second clause in the codicil clearly gives but a life estate to Elizabeth Langdon. In the codicil she omits the words, " what remains of her part," and inserts " said moiety is to descend," &c. and adds a third devisee to the remainder. The words, " said moiety to descend," &c. carry a fee. 2 Vern. 690. And no weight is laid in the want of the words for life, where the intention of the testatrix has otherwise appeared. 2 Atk. 648.

The second codicil cannot be admitted, for it is no part of the will. Evidence *dehors* is only admitted in case of a latent ambiguity, or to rebut a resulting trust. 14 Johns. R. 1; 1 Johns. C. R. 251. But if held a part of the will, it proves nothing of her intentions.

It remains to see what order the Court will take for the protection of those entitled to the remainder. It is said in *Homer* v. *Shelton*, 2 Metc. 405, that although the former practice was to require security of tenant for life of personal property, yet now an inventory only is required, unless in cases of danger. This however applies only to personal chattels, where the tenant for life is entitled to the use of the specific articles. In pecuniary legacies, the old practice was to compel the executor to give security, but the modern practice is to order it paid into Court. 1 Story's Eq. § 603 ; 2 Story's Eq. § 843 ; 2 Paige, 131.

But this is a different and peculiar case. It is the bequest of a residue, including all sorts of articles. They must be sold, and the proceeds invested, and the income only paid to the legatee for life.

*J. Shepley,* for the defendants, said that he had prepared himself to attempt to show, that the bill should be dismissed, because in this mode and in the present condition of the estate, the Court had no power over the subject matter, and also because there were not proper parties to the bill ; but from the great desire of the defendants to have an early decision he was now instructed to waive those objections.

The bill however should be dismissed as to those who claim as heirs at law, because they have no interest in the estate. It was all given to others. They claim only a reversionary interest in the half given to Paul Langdon, and this half will, therefore, be first considered.

By the original will, made by madam Sewall herself, Paul Langdon clearly took an estate in fee simple in the real estate, and had the entire disposition of that half of the personal estate. So far as it respects Paul, the words are, " The residue of my property, after paying my just debts, I give and bequeath to Paul Langdon aforesaid, and Elizabeth Langdon, my niece, constituting them residuary legatees to all my property not otherwise disposed of, whether real or personal, for their use and benefit." The intention to give the whole estate is clearly expressed, and in such case, in a will, the word *heirs*

is not necessary to pass a fee. The cases in support of this position are so numerous, that it would require too much time to call them severally to the attention of the Court. A long list will be found in 4 Kent, (3d Ed.) 535 and 270. The subject was very fully considered by the counsel and by the Court, in *Wait* v. *Belding*, 24 Pick. 129, where authorities in abundance will be found. It was there conceded on all sides, that words like these would pass the fee. If no codicil had been made, as it respects this half, there could have been no dispute under *her will*.

The first codicil does not change the devise of the entire half, given to Paul, from an absolute ownership into a mere life estate, and leave the reversion to go to the heirs at law, as undevised estate.

This codicil bears on its face evidence that it was written by one who had no knowledge of law, and was wholly unacquainted with technical terms. This appears in every part of it. Here the several provisions of the will were examined, and among the instances shown, was the fourth provision of this codicil. " My library I leave to the discretion of William Goddard, my executor, to dispose of as he, with the advice and consent of my heirs named in the original will and in this codicil, shall think proper." A majority of the legatees and devisees were not heirs at law, and a majority of the heirs at law, were not named in the will or codicil. As technical terms are used in other parts of the codicil without meaning, and obviously contrary to their legal meaning, the words, " life estate," and " natural life," should not have any technical meaning attached to them, and should have no particular influence above other words in giving a construction to the instrument. The general and well established rule is thus laid down by Chancellor Kent, (4 vol. 3d Ed. 534.) " The intention of the testator is the first great object of inquiry; and to this object technical rules are, to a great extent, made subservient. The intention of the testator, *to be collected from the whole will*, is to govern, provided it be not unlawful, or inconsistent with the rules of law." And a general intent in a will,

is to be carried into effect at the expense of any particular intent. *Inglis* v. *Sailors' Snug Harbour*, 3 Peters, 117. The general intent of the testatrix, in the case now under consideration, *was to dispose of her whole property by her will, and to leave none to her heirs at law.* This intention is found in the preamble, and in the conclusion, where "the residue of the property," not otherwise disposed of, "whether real or personal," is given to residuary devisees and legatees; in the consideration, that she could never have intended that Elizabeth Langdon should have had a share of Paul's half as heir at law, as she would if the reversion was undevised; she could not have intended, not only to take the property from Paul, but to prevent its going to his daughter Elizabeth, brought up in the house with her, and the special object of her regard, and to go to strangers; she could not have supposed she was giving but a life estate to Paul and his wife, and at the same time leaving one share of the reversion to go to him as an heir at law; and when she thus speaks of William Goddard in her latest expression of her will, she could not have intended that he should have inherited a part of her property, taken from Paul, in whom she showed her continued confidence by appointing him executor in the place of Goddard. And as immediately afterwards she made a devise over of the other half, if any should be left undisposed by Elizabeth, to be put on interest, she considered it already given away, or she would have also disposed of this half.

The words themselves do not imply that any diminution of the estate was intended. It is the same "moiety or half of my estate," which "I do by this codicil devise jointly to my said nephew, Paul Langdon, and to his wife Sarah Abigail Langdon." The remaining words were used without meaning, or without understanding their meaning, as is not uncommon with those who make use of technical words, on any occasion, when they do not understand them. He actually intended to say, and thinks he has said, that Paul's wife should come in equally with him, jointly, and that the survivor should have the estate as Paul had it in the original will. The words are

all in one sentence, " as a life estate, to hold, possess and enjoy by them or either of them who may survive the other during his or her natural life." There is no devise over to others. The same words are used as to both real and personal estate. No one, who understood what he was saying, would have spoken of a life estate in horses, neat cattle and provisions. If this had consisted of such personal estate alone, it would have been an absolute absurdity to suppose, that an estate for life only, in its technical sense, was intended. She manifestly intended that the real and personal estate should go together, and there is no pretence of restriction of the personal property to the income of it. They take this absolutely. These words, thus used, should not be permitted to control the manifest intention exhibited in every part of the will. Rather than that this should be done, the words should be wholly rejected. The rule that what is last said in a will, is to govern, does not apply, for we rely on the whole will and codicils, against these words alone.

Goddard's codicil makes the testatrix say, that her intention was to give but a life estate to Paul Langdon and his wife, and that the reversion should go to the heirs at law. By her revocation of that codicil the testatrix repudiates that construction. And had she not expected this estate was already devised to Paul and his wife, she would have disposed of the remainder.

The two minor plaintiffs claim the reversion of two thirds of the whole half of the estate given to Elizabeth Langdon. To sustain the bill as to that part, they must show that Elizabeth Langdon had no power to dispose of any part of it. If this power existed, it could not be ascertained, whether any thing would be left by her until after her death.

But by law this half of the estate was given absolutely to her and to her heirs, to be at her disposal, and the devise over of " what remains of her part," is wholly inoperative. The devise over is not of what remains after the death of the testatrix, but in the words of the will, " *after the death of Elizabeth, what remains of her part,* to be put at interest for the

benefit of Elizabeth S. Langdon and Anna Pickering." The codicil merely brings in William Goddard to share this with them without making any change in the nature of the estate. Without these words, she is placed precisely like Paul Langdon in the original will, and the argument to show that by the will as first made, he took the entire half of the estate to his own use, applies here. The intention of the testatrix seems to have been to give one half of her estate to Elizabeth, and to authorize her to dispose of it as she pleased during life, and if any thing should be left by her at her decease not disposed of, the testatrix intended to give it to the children named, instead of leaving it to be disposed of by Elizabeth *by will*. But this last the law will not permit to be done. If property is devised and bequeathed to one, with the absolute power over it, to sell and dispose of at pleasure, there cannot be a vested interest in the same property given to another. Here the estate is given to Elizabeth Langdon " for her own use and benefit," and " after the death of Elizabeth, what remains of her part" only is devised over. I propose to cite but a few authorities, and those will be the latest in Massachusetts and Maine. *Merrill* v. *Emery*, 10 Pick. 507, where the words were — " all the family stores my said wife may leave at her decease," and " whatever money my wife may have in her possession at the time of her decease," and also a devise over of the same. The devise over was held to be void. *Harris* v. *Knapp*, 21 Pick. 412. The words here were, " what remains of said real and personal estate (at the death of the testator) I give and bequeath as follows : one half thereof to my said daughter, Mary Harris, *for her use and disposal during her life*; and *whatever shall remain at her death*, I give the same to her two daughters, Dorothy and Sarah, in equal shares." They are nearly the same words used in Mrs. Sewall's will. It was held, that Mary Harris took an estate in fee in the land, and the absolute ownership of the personal property. And in *Burbank* v. *Whitney*, 24 Pick. 146, the same principle is recognized. The subject came under the consideration of our own Court, in *Ramsdell* v. *Ramsdell*, ar-

gued in Kennebec, in 1842, in which the opinion has recently been given. (21 Maine R. 288.) The question was fully discussed in that case. This single extract will show, that it establishes the ground I take in the present case. "That it was the intention to authorize her to dispose of the property, named in the second clause, absolutely and without any limitation, is clearly implied by the words, "*if any remains*," in the devise over." The bill, then, should be dismissed as to these two plaintiffs, because they have shown no interest in themselves, present or reversionary.

But although the defendants are desirous that the rights of all under the will may be declared, I do not perceive how any thing beyond this can be done by the Court, under this bill, even if the construction contended for by the plaintiffs be correct. The real estate cannot be destroyed, and if the tenants for life, as they are called in the bill, commit waste, there is a complete and adequate remedy at law, and they certainly should not be at the expense of trustees, nor should the reversioners who have not joined in the bill be made to do so. And on the plaintiffs' construction, the tenants for life are to have the complete use and advantage of the whole of the personal estate, without deduction of the expense attendant on its being placed in the hands of trustees. Nor is there any necessity for it. For where the interest is given to one for life, and the principal is given over, and an executor is appointed, and no trustee, the executor is trustee, and no new bond is required. *Dorr* v. *Wainwright*, 13 Pick. 328.

*Preble* argued on the same side, and replied to the argument in behalf of the plaintiffs.

*Fessenden* replied.

The opinion of the Court was drawn up by

SHEPLEY J. — The plaintiffs are certain of the heirs at law and of the devisees of the late Elizabeth Sewall, and they seek by this bill to obtain such a construction of her will, as may declare their rights; and to have those rights, when

ascertained preserved and secured to them. All objections to matters of form and for want of proper parties have been waived. The will and codicils have been very unskilfully drawn. Clauses in the will and in the first codicil are so opposed to each other, that they cannot be reconciled. There would be no difficulty in deciding, which must prevail, were it not perceived, that the same general purpose and intention modified and varied in the codicil, is discoverable in both, while the language is utterly repugnant. To exhibit any satisfactory conclusion it will be necessary to endeavor to ascertain the intentions of the testatrix ; and to inquire, whether it be possible to carry those intentions into effect. Some of the parties plaintiff present their claims only in the character of heirs at law. Was it the intention of the testatrix to leave any of her real or personal estate undisposed of by her will ? She gave certain legacies by the original will, and then, follows this clause. " Sixthly, the residue of my property after paying my just debts I give and bequeath to Paul Langdon aforesaid and Elizabeth Langdon, my neice, constituting them residuary legatees to all my property not otherwise disposed of, whether real or personal, for their use and benefit ; and after the death of Elizabeth, what remains of her part to be put at interest for the benefit of Elizabeth S. Langdon and Anna Pickering." This language exhibits her intention very fully and clearly to dispose of all her real and personal estate by her will ; and it is sufficient to enable the Court to carry that intention into effect. There is nothing in the codicils to authorize the inference, that this intention was in the least degree altered. There are however such intentions disclosed in the first codicil, and such language is there used, that it may be impossible to give effect to her intention to dispose of her whole property without an entire disregard both of the language and intentions exhibited in that codicil. If such should be the result, still the intention to dispose of the whole must be admitted to be fully and clearly discoverable by an examination of the will and codicils together. The only ground therefore, upon which her heirs at law can rest their

claim to any portion of her real or presonal estate, is, that it is impossible according to the rules of law to carry her intentions fully into effect. By the clause in the original will there can be no doubt that Paul Langdon would take an estate of inheritance in the moiety of her real estate, and a moiety of the residue of her personal estate absolutely. In the first codicil the testatrix says, " the moiety or half of my estate, which in said will I devised to my nephew Paul Langdon of said York, I do by this codicil devise jointly to my said nephew Paul Langdon and to his wife Abigail Sarah Langdon, as a life estate, to hold, possess and enjoy by them, or either of them who may survive the other, during his or her natural life." Here is a very clear devise of that moiety to the husband and wife for life and to the survivor for life. And there can be no doubt, that such was the intention of the testatrix. Was it then her intention to deprive Paul of an estate of inheritance and of the full dominion over the personal estate and thereby cut off the hopes of his children ? There is no devise over of the reversion after the death of Paul and his wife. She did not mean to leave it undevised. Her purpose doubtless was to prevent the property from being wasted by Paul by diminishing his interest in it to a life estate, and to give his wife a life estate in it. And she either did not know or it did not occur to her, or to the one who drew this codicil, that by accomplishing these purposes she had withdrawn from Paul an estate of inheritance and the absolute right to the personal estate, so that their children on their decease could take by heirship from them no part of that moiety. By comparing the will and the codicils the intention will be perceived to give Paul and his wife the enjoyment of the property during their lives, and to preserve it for their children or heirs after their decease. Can these intentions be carried into effect ? Neither in the will nor in the codicils is there any devise over of that moiety to the children, and they cannot take the property upon the decease of their parents by virtue of any language used by the testatrix. Nor does it appear to have been her intention, that they should take it in any other

manner than by inheritance from their father. If she had used any language, which could be employed to carry her purpose of permitting it to become beneficial to the children into effect, it would be the duty of the Court to make use of it for that purpose. But the Court is not authorized to supply omissions by adding words even for such a purpose. The intention is one thing, and the execution of that intention by the testatrix another. She must execute her intentions, or by the use of some language give to the Court the power to execute them, to make them effectual. In *Blamford* v. *Blamford*, 3 Buls. 103, Mr. Justice Dodderridge is reported to have said, " to add any thing to the words of the will, or to relinquish and leave out any of the words is *maledicta glossa.*" In the case of *Chapman* v. *Oliver*, 3 Burr. 1634, Lord Mansfield is reported to have said, " a court of justice may construe a will, and from what is expressed necessarily imply an intent not particularly specified in the words ; but we cannot from arbitrary conjecture, though founded on the highest degree of probability, add to a will, or supply the omissions. Lord Hardwicke, though generally liberal in construing the intent of testators, would not supply a contingency omitted in the most favorable case, that could exist." When the intention of the testator is incorrectly expressed, and it is apparent, that he intended to have used other words, they will be supplied ; but the Court cannot supply words, that would carry that intention into effect without being satisfied, that it was his intention to have used them. *Covenhoven* v. *Shuler*, 2 Paige, 122. There being no words in the will or codicils to give to the children of Paul Langdon any beneficial interest in that moiety, and no evidence or indication, that the testatrix intended to have used any such words, they cannot be supplied. And the children can take nothing by the will. Nor can Paul Langdon take such an estate, that they can inherit it from him without an entire rejection of that clause of the codicil, which gives the property to him and his wife for life ; for that clause cannot be so construed as to give it effect, without depriving Paul of an estate of inheritance. And that clause cannot

be rejected without disregarding the intentions of the testatrix clearly expressed, and without depriving the wife of Paul of her estate for life in the property. That estate may be a valuable one to her, and no such construction can be adopted, as would wholly deprive her of it, for the purpose of carrying into effect another intention of the testatrix, not more clearly exhibited and not executed. To do so would be to defeat entirely one of the main purposes of the testatrix in making that codicil, viz. that of diminishing the interest of Paul in that moiety to a life estate and of giving to his wife a life estate in it. Nor are the Court authorized to reject the words, by which their interests in that property were limited for life. In *Sims* v. *Doughty*, 5 Ves. 247, it is said, "I cannot reject any words, unless it be perfectly clear, that they were inserted by mistake." The clause in the will, by which an estate of inheritance in this moiety is devised to Paul, and the clause in the first codicil, by which an estate for life is devised to him and his wife, and to the survivor for life in the same property, are entirely inconsistent, and both cannot be executed. In such case the latter clause must prevail. *Constantine* v. *Constantine*, 6 Ves. 100; *Wykham* v. *Wykham*, 18 Ves. 421; *Homer* v. *Shelton*, 2 Met. 202. It is contended, that the general intent to dispose of the whole property, should prevail in preference to any particular intent. That rule applies to cases, where there is an intention exhibited to make a certain disposition of the property, and the mode of executing that intention is erroneously, defectively, or illegally prescribed in the will; and not to cases where there is a clear intention to effect another purpose distinct and differing from the more general intent or object. The general intent to dispose of the whole of her property, cannot therefore authorize the Court to destroy or disregard the other and different purpose to give to Paul and his wife estates for life. Nor is it perceived, that any distinction can be made between the real and personal estate in this particular. For although it was anciently held, that a bequest of personal property for life passed an absolute property to the legatee, it has long been the established doc-

trine, that a life estate only in it may be devised, and that a devise over may be good by way of executory devise. If there be no devise over, it has been decided, that the reversionary interest in it will be considered as undevised property of the testator, and be distributed to his next of kin according to the statute of distributions. In the case of *Daveis* v. *Dewes*, 3 P. Wms. 40, the testator gave to his wife all his plate for her life, five thousand ounces of it to be at her disposal, stating that he intended to dispose of the residue by a codicil. And he gave her the goods and furniture in Cheevely house for life, stating that he intended to dispose of them after her death by a codicil. But he made no such disposition of the residue of the plate, or of the furniture. The case states, that the "Lord Chancellor was of opinion, that the goods and furniture in Cheevely house, and the surplus of the plate beyond the five thousand ounces, were undisposed of by the will, and should go to the next of kin according to the statute of distributions." In the case of *Ferson* v. *Dodge*, 23 Pick. 287, the testator gave to his wife the use and improvement of all his estate, both real and personal, so long as she remained his widow, ordering her to pay all the legacies given to others; and gave to a nephew one half of his personal estate after the marriage of his widow. There was no devise over of the other half of the personal estate. There was a devise of the real estate, which it is not important in this case to notice. The Court say, " the whole tenor of the will tends to show a desire to dispose of all his property." And "that it is not improbable, that the testator supposed, that he had included all his estate, personal as well as real, in the first clause," and that " it is probable, that the testator intended to give to his favorite nephew all his personal as well as his real estate, diminished only by the amount carved out for his wife." The decision was, that one half of the personal estate did not pass by the will ; that it remained intestate property ; and that it was to be distributed among the heirs at law of the testator, according to the statute of distributions.

The Court can make no order or decree in this case respect-

ing that moiety of the real estate. The law will determine the rights of the parties. But as Paul Langdon and his wife have only life estates in this moiety of the personal property, the law will protect the interests of those entitled to it, after their decease. The executors themselves become trustees for those thus entitled, and they should retain in their hands one half of the residue or balance of the personal property remaining after payment of the debts, legacies, and charges, and invest it safely, and pay the interest accruing upon it to Paul Langdon and his wife during their lives, and then to the survivor during life; and after his or her decease, the principal sum should be distributed to the next of kin of the testatrix according to the statute of distributions.

With respect to the other moiety of the residue, it appears to have been the intention of the testatrix in her original will to give it to her neice, Elizabeth Langdon, for life, with the right to expend so much of it as should be necessary or convenient, and to give what should remain at her decease, to Elizabeth S. Langdon and Anna Pickering. In the first codicil she says, " the moiety or half of my estate, which in said original will I devised to my niece, Elizabeth Langdon, by this codicil my will is, that after the decease of the said Elizabeth Langdon, said moiety is to descend to Elizabeth Sewall Langdon, Anna Pickering, and William the oldest son of William Goddard, M. D. of Portsmouth, equally." It was not the intention of the testatrix to provide for Elizabeth Langdon by this clause of the codicil. There is no devise of any thing to her unless by implication in it. She takes by the will, which, as well as this codicil, is confirmed by the third codicil, wherein the testatrix speaking of them says, " which said instruments were made with great caution and mature deliberation." In neither of them are there any words of limitation of this moiety to Elizabeth for life. There is no indication in this codicil of any intention to make a change with respect to her rights over this moiety. But if it be doubtful, whether the testatrix intended to continue to her the power to dispose of so much of it, as might be necessary; or if it be conceded, that

she did not intend to continue that power, it is not perceived, that the result could be affected by it. For the legal effect of that clause in the will must be the same with or without such a power to dispose of the property. If the words, "what remains of her part," had been omitted, Elizabeth would have taken by that clause in the will, an estate in fee in the real estate and an absolute right to the personal estate. *Grayson* v. *Atkinson*, 1 Wil. 333 ; *Hogan* v. *Jackson*, Cowp. 299; S. C. 7 Bro. P. C. 467 ; *Wall* v. *Langlands*, 14 East. 370 ; *Thomas* v. *Phelps*, 4 Russ. 348 ; *Fraser* v. *Hamilton*, 2 Desau. 578 ; *Jackson* v. *Housel*, 17 Johns. R. 281. The devise over of her moiety after her decease must therefore be inoperative, as this Court has already decided in the case of *Ramsdell* v. *Ramsdell*, 8 Shepl. 293. And to this moiety neither the heirs at law, nor the devisees can have any legal rights.

The Court in this case may well adopt the language of the Master of the Rolls in the case of *Constantine* v. *Constantine*, 6 Ves. 101, and say, "I am at last under the disagreeable necessity of giving judgment upon a case, in which the judgment cannot be satisfactory to the Court, and by which I must be sure, I am not performing the intention."