# WHEELING.

## GRAHAM v. GRAHAM et als.

Submitted January 18, 1883—Decided December 1, 1883.

1. The heir will not be disinherited, unless it is done by the express terms of the will or by necessary implication. (p. 40.)

2. The heir being favored in law, there should be no strained construction to work a disherison, where the words of the will are ambiguous. (p. 40.)

3. The intention of the testator must be gathered from the will itself, whenever it is possible to do so. (p. 41.)

4. Every word in a will is to have its effect, provided an effect can be given to it not inconsistent with the general intent of the whole · will when taken together ; and no word is to be rejected, unless there cannot be a rational construction of the will with the word as it is found. (p. 41.)

5. It is not necessary to take all the words in a will in the order in which they are placed ; as the courts may by transposition so

arrange them as to comply with the intention of the testator. But in no case, where the words are plain and unequivocal, is a transposition to be made in order to create a meaning and construction different from that which they naturally had as written ; much less to let in different devisees or legatees, or to exclude those already provided for.   (p. 41.)

6. Where a former clause is express and particular, no subsequent clause shall be permitted to enlarge it, if the two clauses can stand together.   (p. 41.)

7. When a testator in the disposal of his property overlooks a particular event or matter, which, had it occurred to him, he would probably have guarded against, the court will not employ or insert the necessary clause for the purpose of supplying the omission.   (p. 41.)

8. Though the inference of intention be more or less strong, yet, if not necessary or indubitable, the court will not aid the supposed intention by adding or supplying words.   (p. 41.)

9. All the parts of a will are to be construed together, so as, if possible, to form one consistent whole.   (p. 41.)

10. The inconvenience or absurdity of a devise is no ground for varying the construction, where the terms are unambiguous ; but when the intention is obscured by conflicting expressions, it is to be sought in a rational and consistent rather than in an irrational and inconsistent purpose.   (p. 41.)

11. Words and limitations may be transposed, supplied or rejected, when the immediate context or the general scheme of the will warrant it, but not merely on a conjecture or hypothesis of the testator's intention.   (p. 41.)

12. The rule, that the general intent to dispose of the whole property should prevail in preference to any particular intent, applies to cases, where there is exhibited an intention to make a certain disposition of the property, and the mode of executing that intention is erroneously, defectively or illegally prescribed in the will, and not to cases, where there is a clear intention to effect another purpose distinct and differing from the more general object.   (p. 42.)

13. If the testator uses language, which can be construed so as to carry the general intent and purpose into effect, it is the duty of the court so to construe the language as to accomplish that object ; but the court is not authorized to supply omissions by adding words even for such a purpose. The testator must express his intention or use such language as will enable the court to ascertain what his intention is, in order to make it effectual.   (p. 42.)

14. When implications are allowed, they must be such as are necessary or at least highly probable and not merely possible. In construing a will conjecture must not be taken for implication. Necessary implication means so strong a probability of intention, that an intention contrary to that imputed to the testator cannot be supposed. The whole will taken together must produce the conviction, that the testator's intention was to create the estate raised by implication. (p. 42.)

15. In supplying words in a will the correct rule is to supply such only, as it is *evident* the testator *intended* to use, and not such also, as would be necessary to *effectuate* the supposed intention of the testator. (p. 42.)

16. Where the words "real estate" are not used in the operative clause of the devise itself but are introduced in another part of the will, as in the codicil, by way of recital as to what was in the operative clause, such words so used cannot have the effect nor be construed to extend the meaning of the operative clause. (p. 46.)

The facts of the case appear in the opinion of the Court.

*A. C. Houston* for appellants.

No appearance for appellee.

JOHNSON, PRESIDENT:

Joseph Graham by his will made the following bequests:

"In the first place I give to my beloved wife Rebecca one third of all my personal property, and also any use she may have need of any part of my land, that may be in possession of her children during her life, in proportion to what they possess.

"And in the second place, I give my daughter Betsey Ballenger one hundred acres of land where she now lives, to be laid off according to a writing in her favor, and not to be of the two hundred and eighty-six acre survey which is given by her grandfather's will to her mother.

"I also give to my daughter Florence Nowlan ten dollars worth of property.

"I also give to my daughter Jane and her daughter Martha each, one dollar a piece, and the rest of my estate personal, to be divided equally among my four sons, and the children of my daughter Rebecca Ballenger, and if they should all

die without issue their part of my estate is to be divided among my sons and their heirs as the case may be.

"Given under my hand and seal this 26th day of September, 1854.

"JOSEPH GRAHAM.    [SEAL.]

"CODICIL.

"Having made my last will and testament of my estate, real and personal, on the 26th day of September, 1854, and in the said will I have bequeathed two thirds of said estate to my four sons and the three children of my daughter, Rebecca Ballenger, and I hereby revoke that share of said estate which is left to my son, Lanty Graham, and after all my just debts are paid, the balance to be divided among three sons and Rebecca's children, as witness my hand and seal this 18th day of October, 1854.

"JOSEPH GRAHAM.    [SEAL.]"

The will and codicil were admitted to probate, in May, 1858.

In a suit in the circuit court of Monroe county, to have the will construed and partition made of the real estate, of which the said Joseph Graham died seized, it appeared that the legal title to about eighteen hundred and twenty-one acres of land was in said Graham; and it appeared, that he had advanced to some of his children lands, and given them title-bonds therefor: to his daughter, Elizabeth, one hundred acres valued at three hundred dollars; to John Graham seventy-five acres valued at two hundred and sixty-two dollars and fifty cents; to David Graham one hundred and thirty-five acres valued at four hundred and five dollars; to the plaintiff, James Graham, one hundred and thirty-nine acres valued at four hundred and seventeen dollars.

By a decree rendered in the cause on the 21st day of October, 1879, the court construed said will and held, "that the real estate of Joseph Graham, deceased, passed under the said will to David Graham, John Graham, James Graham and the children of Rebecca Ballenger, and that Florence Nowlan took nothing under said will except the specific bequest of ten dollars." The decree proceeds to appoint three commissioners to lay off said land into four equal parts and

to assign the same, one to David Graham, one to John Graham, one to James Graham and the other to the children of Rebecca Ballenger, and report to the court, so that a final decree could be made.

From this decree Lanty Graham and the heirs of Florence Nowlan appealed and assign as error, that the court held, that Joseph Graham by his will disposed of all his real estate.

It is evident from the decree of the circuit court, that words were supplied in order to make effectual the supposed intent of the testator. It was held by this Court in *Houser* v. *Ruffner*, 18 W. Va. 244, that in construing wills, words and expressions of doubtful meaning will not be construed, if it can be avoided, so as to create an intestacy. The testator having made his will will be presumed to have intended to dispose of his whole estate, unless the contrary plainly appear. While this is true, there is another rule quite as binding on the court in the construction of a will, viz., that the heir must not be disinherited, unless it is done by the express terms of the will or by necessary implication. (*Irwin* v. *Zane*, 15 W. Va. 646.) The heir at law never takes by the act or intention of the testator. His right is paramount to and independent of the will, and no intention of the testator is necessary to its enjoyment. On the contrary, such right can only be displaced or precluded by direct words or plain intention, evincing a desire upon the part of the testator, that he shall not take, &c. He needs no argument or construction showing intention in his favor to support his claim. They belong to the party claiming under the will and in opposition to him. *Augustus* v. *Seabolt*, 3 Metc. (Ky.) 155. In *Creswell* v. *Lanson*, 7 Gill. & Johns. 227, it was held, that the heir being favored in law, there should be no strained construction to work a disherison, where the words are ambiguous.

In the will before us, in order to make effectual the supposed intent of the testator, to disinherit several of the heirs, the clause in the will which provides, "and the rest of my estate personal to be divided equally among my four sons and the children of my daughter Rebecca Ballenger," was changed by the interpolation of the words "real and," so as to read, "and the rest of my estate *real and* personal, to be equally divided, &c." Was the interpolation of those words

justifiable; and did the intention of the testator as gathered
from the whole will require that they should be interpo-
lated? The intention of the testator must be gathered from
the will itself, whenever it is possible to do so. Every word
is to have its effect, provided an effect can be given to it not
inconsistent with the general intent of the whole will when
taken together; and no word is to be rejected, unless there
cannot be a rational construction of the will with the word as
it is found. Nor is it necessary to take all the words in the
order in which they are placed, as the court may by transpo-
sition so arrange them as to comply with the intention of the
testator. But in no case where the words are plain and une-
quivocal, is a transposition to be made, in order to create a
different meaning and construction from that which they
naturally had as written, much less to let in different devisees
and legatees, or exclude those already provided for. Where
a former clause is express and particular, no subsequent
clause shall be permitted to enlarge it, if the two clauses can
stand together. When a testator in the disposal of his prop-
erty overlooks a particular event or matter, which, had it
occurred to him, he would probably have guarded against,
the court will not employ or insert the necessary clause for
the purpose of supplying the omission. And though the
inference of intention be more or less strong, yet, if not nec-
essary or indubitable, the court will not aid the supposed in-
tention by adding or supplying words. (*Augustus* v. *Seabolt*, 3
Metc. (Ky.) 155. All the parts of a will are to be construed
in relation to each other, so as, if possible, to form one con-
sistent whole.

The inconvenience or absurdity of a devise is no ground
for varying the construction, where the terms are unambigu-
ous. But when the intention is obscured by conflicting ex-
pressions, it is to be sought in a rational and consistent rather
than in an irrational and inconsistent purpose.

Words and limitations may be transposed, supplied or re-
jected, when the immediate context or the general scheme of
the will warrants it, but not merely on a conjecture or hypoth-
esis of the testator's intention. (*Jackson* v. *Hoover*, 26 Ind.
511.)

In the construction of wills the rule, that the general in-

tent to dispose of the whole property should prevail in pref-
erence to any particular intent, applies to cases, where there
is an intention exhibited to make a certain disposition of
the property, and the mode of executing that intention is
erroneously, defectively or illegally prescribed in the will,
and not to cases, where there is a clear intention to ef-
fect another purpose distinct and differing from the gen-
eral object. If the testator uses language, which can be
construed so as to carry the general intent and purpose into
effect, it is the duty of the court to so construe the language
as to accomplish that object; but the court is not authorized
to supply omissions by adding words, even for such a pur-
pose. The testator must express his intention, or use such
language as will enable the court to ascertain what his in-
tention is in order to make it effectual. (*Pickering* v. *Lang-
don*, 22 Me. 413.) When implications are allowed they must
be such as are necessary, or at least highly probable,
and not merely possible. In construing a will conjecture
must not be taken for implication. Necessary implication
means, so strong a probability of intention that any intention
contrary to that imputed to the testator cannot be supposed.

The whole will taken together must produce the convic-
tion, that the testator's intention was to create the estate,
raised by implication. (*McCoury* v. *Leck*, 14 N. J. Eq. 70.)

I will give from a number of the adjudicated cases some
instances of the supplying of words. In *Lynch* v. *Hill*,
6 Munf. 114, it was held, that in supplying words in a will
it is the most correct course to supply such only, as it is *evi-
dent* the testator *intended* to use, and not such also, as would
be necessary to *effectuate* the supposed intention of the testa-
tor. In that case the words of a contingent limitation being
"*in case S. N. C. without issue of body lawfully begotten, then,
&c.*," the words "die" and "her" may be supplied as evidently
intended by the testator, but not the word "leaving," which
he might not have known to be necessary in law to give the
limitation effect and therefore might not have intended to
use.

In *Dew* v. *Barns*, 1 Jones Eq. 149, the provision of the
will was, "if either of my should die without a lawful heir,
the longest lived heirs the whole of both estates." Battle,

J., said: "The word 'either' taken by itself signifies one or another of any number, but it is here confined to two by force of the word 'both' which signifies 'two' considered as distinct from others or by themselves. The omitted word or words then is or are 'sons' or 'two sons;' and it is so plain that such and no other was the testator's meaning, that no argument can make it plainer."

In *Sessoms* v. *Sessoms*, 2 Dev. & B. 453, the word "dollars" was supplied after the words "five hundred" it being clear from the will that that was the intention.

In *Geiger* v. *Brown*, 4 McCord 418, in a bequest to a wife the testator said: "All my household furniture and the increase of the said negroes during her natural." The word "life" was supplied.

In *Reid* v. *Hancock*, 10 Humph. 368, the bequest was: "I give to my wife all my property during her widowhood, until my children become of lawful age. After that event I wish it equally divided among them.". It was held that the manifest intent of the testator to give all his property to his wife during her widowhood *or* until his children should become of lawful age, and on the happening of *either* of these events to divide it equally between the wife and children; and to carry out manifest intention the court will supply words and disregard strict grammatical construction.

In *Kellogg* v. *Mix*, 37 Conn. 243, the language of the will was: "After paying my debts I give to my beloved wife C. in trust for the maintenance of herself during her life and of my daughter E. so long as she remains single; and to my son G. four hundred dollars a year to be paid to him by my trustees." A previous clause had given the entire estate to trustees for the purposes to be stated in the will. No other disposition of the income which was over four thousand dollars a year was made during the life of the widow; but the income was given to the children after her death, and any appropriation of any part of the principal of the estate before her death was forbidden, unless with her consent; and there was a provision, that she should have the entire use of her portion of the estate until her death. Held, that it was clear, that the testator intended to give his widow *the net income of the estate* during her life, except the four hundred dollars

given to his son, and that these words should be supplied in construing the legacy to her.

In *McKeehan* v. *Wilson*, 53 Pa. St. 74, it was held, that when the omission or insertion of words has left unexpressed or wrongly expressed what from the whole tenor of the will was the intention of the testator, the court will permit the will to be read as if the words had been inserted or omitted. But this is to be done only when such intention is clear beyond a reasonable doubt by the will itself, except in some cases of latent ambiguity. The rule applies to a *defectively expressed* intent. If from the will the intent cannot be gathered, words cannot be supplied to disclose an intent. In that case it was held, that the word "children" may include "grandchildren," where succession is evidently intended.

In *Zerbe* v. *Zerbe*, 84 Pa. St. 147, the testator's will contained this clause: "First I give and bequeath unto my son Edward and Peter and my daughter Catharine and Mary my daughter's children Daniel, John, Elizabeth and Emma. Mull they shall stand in equal shares, that is to say Mary's children shall have the share of their mother. Item, my son Daniel and Jarrett and my daughter Sarah and Louisa's child Edward Hummel they shall have nothing of my estate, they have more now than their shares would come to. Last and also I appoint my son Edward and John Zimmerman farmer as my executors of this my last will and testament and they shall have a right to sell the property and make it into money, when they think fit to do so, or when it will bring the most money." *Held*, that this will carried all the real and personal estate of the testator to those mentioned in the first clause, and that the word "estate" belonged to the first clause of the will as well as the second, and that the word "shares" in the first clause, corresponds to the same word in the last clause, and both refer to the same estate.

In *Varner's Appeal*, 87 Pa. St. 422, the testator devised all of his estate to trustees, to pay over the income of one half thereof to his granddaughter until she attained the age of twenty-five years and then to convey to her in fee the one half of his estate, "subject to the payment of its *pro rata* share of the annuities hereinafter charged on my said estate." In another clause of his will he directed the income of the

other half to be paid to his two nephews and a niece in equal shares, and when the youngest of them attained the age of twenty-one years, their shares should be conveyed to them in fee, "subject to the payment of the *pro rata* share of the annuities hereinafter charged upon my said estate." In two separate clauses he created annuities and made them an express charge upon the shares of the nephews and the niece, but made no mention of the granddaughter in either of these clauses. Commissioners were appointed to make partition of the estate, who divided the same into two parts and charged each with the payment of one half of the annuities, which charge the court sustained, on the ground that it was the manifest intent of the testator to charge both parts of his estate, and that it was evident, that the name of the granddaughter had been omitted by mistake in the clause giving the annuities. *Held*, reversing the court below, that the name of the granddaughter could not be thus supplied, and that her share was not subject to the burden of the annuities; that words can only be supplied in a will, where they are necessary to give effect to the unquestionable purpose of a testator, but, where they will not advance this intent, no such change can be made.

In *Cleland* v. *Waters*, 16 Ga. 496, a testator after naming sundry slaves male and female, adds: "On account of the faithful services of my body-servant, William (the husband of Peggy), I will and do devise his emancipation or freedom with the future issue and increase of all the females mentioned in this item of my will. If it is incompatible with the humanity, &c., of the authorities of the State of Georgia I direct my qualified executor to send the *said slaves* out of the State of Georgia to such place as they may select; and that their expenses to such place be paid by my executor out of my estate, and the whole proceedings be conducted according to the laws and decisions of the State of Georgia, I having no desire or intention to violate the spirit or intention or policy of such State." * * * "I desire that the said slaves, if compelled, may select their residence out of the State of Georgia and in any part of the world." The will directed the forfeiture of the interest of any legatee, who might resist said item. *Held*, that the intention of the

testator was to manumit *all* the slaves mentioned in that item of the will; that where a will is absurd or ambiguous, as it stands, the court may supply words to carry into effect the intention of the testator, when that intention is clearly manifested.

What effect, have prior, or subsequent words, upon the operative part of the will? It might be insisted that the language used in the codicil shows what the testator meant by the words used in the operative part of the will. In *Burton* v. *White*, 1 Exch. 525, the testator used this language : "I give and bequeath to my son George the lease of the farm I rented of Lord L. for his own use and benefit, and also half an acre of freehold land adjoining that one acre of copyhold land." The will contained other devises, and at the end was this passage : "And I give and bequeath and order the rents or interests, that is behind, due and unpaid, shall go and be paid to that person I have left *the estates and properties* respectively to. As to all the rest, residue and remainder of my property whatsoever, and of what nature or kind soever, I give, devise and bequeath the same to be equally divided between and amongst my said wife, Nancy, and her children who have issues, share and share alike." *Held* that a fee in the lands devised did not pass to George, for though the word "estate" in the operative part of a will passes not only the *corpus* of the property but all the interest of the testator in it, unless controlled by the context, yet where that word is not used in the operative clause of the devise itself, but is introduced into another part of the will, referring to it, such word cannot be construed as having the effect of extending the meaning of the operative clause whether prior or subsequent.

Pollock, C. B., said after quoting the clause : "It is contended, that this clause is explanatory of the testator's meaning and shows, that he intended all his interest in the devised land to pass. It is established by a long course of decisions, that the word 'estate' or 'estates' used in the operative part of a will passes not only the *corpus* of the property but all the interest of the testator in it, unless controlled by the context; and that superadded words of local description more applicable to the *corpus* of the property, indicating its situation, or the nature

of its occupation, do not prevent it from passing the whole interest. * * * But where the word 'estates' is not used in the operative clause of the devise itself, but is introduced into another part of the will referring to it, we find no decision or *dictum* authorizing us to construe it as having the effect of extending the meaning of the operative clause, whether prior or subsequent, and to read the will as if the testator had said 'by the devise of lands in another clause, I mean to give all my estate in these lands.'" (See also *Varner's Appeal*, 87 Pa. St. 422).

In *Doe* v. *Allen*, 8 T. R. 497, a testator in the introductory clause of his will used the following language: "As to what real and personal estate it has pleased God to bless me with (all my debts, &c., being first paid out of my personal, and if that is not sufficient out of my real estate) I give and dispose of the same as follows:" Then follows the operative clause: "I devise all my messuages, lands, tenements and hereditaments in S. & C. to A." *Held*, that A. took only a life-estate. If the same language had been used in the operative clause as was in the introductory clause of the will A. would have taken the fee. Lord Keynon, C. J., said: "The plaintiff's counsel in arguing the case anticipated the three grounds on which it might be contended on the part of the defendant that a fee passed by this will. The first is the introductory clause, in which the case of *Ibbetson* v. *Beckwith*, is decisive. That case was decided by a great lawyer, Lord Talbot, who thought that such a clause accompanied by other words in a will would pass a fee, but that that alone was not sufficient for the purpose; and this case has been followed by a variety of others to the same effect." To the same effect is *Beall* v. *Holmes*, 6 Har. & J. 205.

In *Mellish* v. *Mellish*, 4 Ves. 47, the Master of the Rolls said: "When this cause came on to be heard, it seemed to be the opinion of the plaintiffs, who filed their bill to compel the defendant Ann Ross to relinquish any interest she might have in the residue of the personal estate of her natural father, that it was a very plain relief against her. The only question arose upon a doubt, whether the name of 'Ann' in the clause of survivorship was interposed by mere mistake. When first it was opened, I was very much inclined to think,

the mistake was so apparent, that the court would have excluded her; but upon very mature consideration of this will I think I should do too much violence to the words, if I were to indulge in speculations whether the word 'Ann' did or did not creep into the will by mere mistake. He begins by giving Ann Ross three thousand pounds sterling payable at the age of twenty-one or marriage; and in the case of her death before that time he directs that legacy to be considered as part of the residue of his estate; so that it is taking that sum out of the residue to fall into it again in that event. Then subject to some legacies and annuities he gives the residue among his other children; and then comes the clause of survivorship; upon which it is contended, that the words, 'put share or shares,' are so confined to the residue, that it is impossible that the legacy of Ann Ross, can be included. The question is: Can I see sufficient to enable me to declare, that demonstrably, and incontrovertably the name of 'Ann' crept in by mere mistake? I really believe it was so; but I dare not as a judge take upon myself to say this word cannot be reconciled with the rest of the will; and I always understood, that where there is a mistake or an omission, all the court has to do is to see, whether it is possible to reconcile that part with the rest, and whether it is perfectly clear, upon the whole scope of the will, that the intention cannot stand with the alleged mistake or omission."

In *Howland* v. *Union Theological Seminary*, 1 Seld. 193, it was held, that introductory words in a will declaring the general intent of the testator can never alter the sense of a positive devise, so as to give a meaning to its terms, corresponding with the intent so declared, but differing from that which those terms plainly express. Where the words of a devise are obscure or ambiguous, the introductory clause may be justly invoked to aid perhaps control their interpretation, but when they are so clear and explicit as to admit but one interpretation, that must be followed, and the declaration of an opposite or different intent be wholly disregarded. The material subject of a devise, when clearly defined, can no more be changed, than the interest in that subject which the devise purports to convey. And if a specific devise cannot be thus enlarged, a revocation just as de-

finite and specific, upon which the devise is founded, is equally exempt from alteration. Duer, J., delivered in this case an able and very elaborate opinion, in which many authorities are citied, which fully sustain the decision of the court.

In the will, which we are considering, in the first clause the testator gave his wife one third of all his *personal* property. In the second clause he gave his daughter, Betsey Ballenger, one hundred acres of land on which he resided. He then gave to his daughter, Florence Nowlan, ten dollars; to his daughter, Jane, and her daughter Martha one dollar each; "and the rest of my estate personal, to be divided equally among my four sons, and the the children of my daughter Rebecca Ballenger, and if they should all die without issue their part of my estate is to be divided among my sons and their heirs as the case may be." In the codicil which is of course a part of the will and in its construction to be read with it, he says: "Having made my last will and testament of my estate real and personal, on the 26th day of September, 1854, and in the said will I have bequeathed two thirds of said estate to my four sons and the three children of my daughter Rebecca Ballenger; and I hereby revoke that share of my said estate, which is left to my son, Lanty Graham, and after all my just debts are paid the balance to be divided among three sons and Rebecca's children."

To give this will the construction, given by the circuit court, it seems to us, will violate every principle laid down in the cases, which we have cited. There is no necessity to supply a single word. The words used in their natural ordinary signification only make the will to operate on the testator's *personal* property, except the devise of a hundred acres of land to the testator's daughter, Betsy Ballenger. But, it is said, in the codicil he recognizes the fact, that he had disposed of *all* his real and personal property by his will. If this be true, as we have seen, it could not override the plain import of the words used in the operative clause of the will. But effect can be given to the expression "estate real and personal" used by way of recital in the codicil, as part of his real estate was in fact disposed of by the will, and he might have referred to that devise of the one hundred acres to his daughter by the expression; and we presume he did.

There is another recital in the codicil, which shows, that he did not consider, that he had disposed of all his real and personal property. If so, then there was one-third of the real estate, as to which he died intestate. In said will he says he bequeathed two thirds of said estate to his four sons, &c., to whom did he give the other third of *said* estate? It is answered to his wife. But the first clause of the will limits her in the most unmistakable language, to one-third "*of all of my personal property*," and the use of what land she needs that may be in the possession of her children during her life. Then it is clear, that the testator himself in the codicil referred to the two thirds of the estate, the other third of which he had given to his wife, which was the *personal* estate.

It is clear to my mind, that according to the well settled rules of construction we are entirely unauthorized to supply in this will the words "real and" so as to make it apply to all the rest of his estate, both real and personal. The testator died intestate as to all his real estate except the one hundred acres, which he devised to his daughter, Betsy Ballenger. The revocation in the codicil operated to exclude Lanty Graham from any interest in the personal property, but did not and could not affect his interest in the real estate, as to which his father died intestate.

The decree of the circuit court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.