JOHN II ESTATE, Limited, *v.* AGNES H. B. JUDD.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED DECEMBER 29, 1900.      DECIDED MARCH 9, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A clause in a will read: "My bought land" (aina kuai) "that is the *pa* at Pawaa adjoining the *pa* belonging to Kauka on the Waikiki side of the government road running to Waikiki Kai that *pa* is for A. F. Judd that is his land which I devise to him." The testator at the time of his death owned 6.46 acres of land adjoining a lot belonging to the Kauka referred to in the will and 1.05 acre additional adjoining the piece first above mentioned. These two pieces, 7.51 acres in all, were together enclosed by a substantial stone wall and used by the testator as one lot, and are situate at Pawaa on the Waikiki side of the government road to Waikiki Kai. The 6.46 acre piece was acquired by him from the government by purchase; the other by award of the Land Commission.

Held, under the circumstances of the case, that the word "pa" was intended to include the entire enclosed lot of land and that, if the word "kuai" was used by the testator in its ordinary acceptation as distinguishing land acquired by purchase from that acquired by an award of the Land Commission and not in its technical sense, the latter word must be rejected as false description, and that the whole land within the substantial enclosure passed under the terms of the will.

Whether or not a witness has qualified as an expert translator, is a matter largely within the discretion of the trial court. Under the circumstances stated in the opinion, there was no abuse of discretion in refusing to permit a witness to testify as such an expert.

The refusal to admit in evidence a certain map was, if erroneous, not

prejudicial error, because other evidence in the case proved the facts sought to be shown by the introduction of such map and such facts were found by the trial court.

Under the circumstances stated in the opinion, it was not error to exclude the testimony of a witness as to what land was devised by a certain clause of a will, even though such witness was an expert surveyor and translator, the question calling for a construction of the clause, which was a matter for the court.

A witness was permitted to testify as to the meaning of the word "pa". The witness had qualified as an expert in Hawaiian. Held, no error.

After oral decision by the trial court, plaintiff moved for leave to re-open the case to introduce further evidence on certain points stated. The court granted the motion on condition that plaintiff pay $300. attorney's fees of counsel for defendant. Plaintiff declined to take advantage of the ruling on account of the condition imposed and excepted. Assuming that said ruling was in effect a denial of the motion and that it was erroneous, the error, under the circumstances stated in the opinion, held to be not prejudicial.

### OPINION OF THE COURT BY PERRY, J.

This is an action of ejectment brought to recover a triangular piece of land situate on the southeasterly corner of King Street and Waikiki Road, at Pawaa, Honolulu, and containing an area of 1.05 acre. This piece is a part of the land called "Miki," which contained an area of 35.44 acres, and which was awarded to the late John Ii by Land Commission Award No. 8241. The great bulk of the land is on the Ewa side of the Waikiki Road, the opening of said road through said land having left the strip now in controversy on the Koko Head side.

During his life time John Ii also acquired from the Government, but by purchase for the sum of $605.00, a parcel of land, adjoining on the Koko Head side the piece in dispute, containing an area of 6.46 acres, said premises being described in R. P. (Grant) No. 2616.

John Ii, being possessed in fee at the time of his death of

the lands just mentioned, as well as of other lands, died in 1870, leaving a will, two clauses of which are as follows: "Akahi. O Airine Haalou Ii kuu kaikamahine ponoi ka hooilina mua penei: * * * Hookahi Ili aina iloko o Makiki o Kaneialole ke kumu ia o ka wai a hiki i kai o Pawaa." "Elima. O kuu aina kuai oia ka pa i Pawaa e pili la no me ka pa o Kauka ma ka aoao ma Waikiki o ke Alanui Aupuni e holo la i Waikiki Kai no A. F. Judd ia pa oia kona aina a'u e hooili nei." The first of these passages may be translated thus: "First. (I devise) to Irene Haalou Ii, my own daughter and first heir, the following: * * * one Ili aina within Makiki, Kaneialole, that is the source of the water until it reaches down to Pawaa;" and the second, leaving for the present the word "pa" as in the original, "Fifth: My bought land that is the pa at Pawaa adjoining the pa belonging to Kauka on the Waikiki side of the Government road running to Waikiki Kai that pa is for A. F. Judd that is his land which I devise to him."

Irene was the sole heir of her father, and if the latter died intestate as to any of his property, the title thereto passed to her by descent. The plaintiff, a corporation, has acquired by mesne conveyances whatever title, if any, Irene had to the piece in controversy either by virtue of the provisions of her father's will, or by inheritance. Plaintiff's claim in the present case is that the land was devised to Irene by the first clause of the will, and not to Judd by the fifth clause, and that, if it was not devised by the first clause, Irene inherited it. The defendant, on the other hand, contends that the land was devised to A. F. Judd by the fifth clause, and not to Irene by the first.

It is practically undisputed—in any event, the Circuit Court before which the case was tried, jury waived, so found from the evidence, and there was evidence sufficient to sustain the finding—that prior to and at the time of the death of the testator the land granted by R. P. 2616, and the parcel now in dispute were together enclosed by a substantial stone wall, and used as one lot, without any fence or other structure dividing them or distinguishing the one from the other. The difference of opinion as to the construction of the fifth clause arises from

the fact that only the land described in R. P. 2616, and not that called "Miki," was "bought" land, i. e., if the term was used by the testator, as seems probable, in its ordinary acceptation as distinguishing land acquired by purchase from that acquired by an award of the Land Commission, and not in its technical sense denoting land other than that acquired by descent. If the word "pa" was used by the testator as meaning an *enclosed* lot, then there is a conflict in these two elements of the description. If, on the other hand, the word as used means an *unenclosed* lot, or if the word "kuai" was used in its technical sense, in either of such cases there is no conflict, the result reached in the one, however, being quite different from that reached in the other. The trial court took the view that the word "kuai" was used in its ordinary sense, that by the word "pa" the testator meant the whole lot within the substantial enclosure, and that the words "aina kuai" should be rejected as a false description, and accordingly found for the defendant. The case comes to this court on a number of exceptions which will be disposed of *seriatim*.

1. On the direct examination of J. F. Brown, a witness for the plaintiff, the following preliminary questions were asked and answers given: Q. "Are you a surveyor?" A. "Yes." Q. "How long have you been a surveyor?" A. "I have been connected with that work at least twenty-five years." Q. "Do you understand the Hawaiian language?" A. "I am not an expert. I am reasonably familiar with it. I have had numerous occasions to interpret in surveying matters. I understand it in reference to terms used in surveying." Then the question was asked, "Will you be kind enough to look at clause five of this will and give us your translation of it?" to which an objection was made and sustained. The witness qualified as an expert in surveying, and in translating terms used in surveying, but the question propounded did not call for any expert knowledge on these subjects, because clause five does not contain any technical terms used in surveys. The question called for expert knowledge in the translation generally of Hawaiian into English. There is no definite rule by which it

can be ascertained whether or not a witness has qualified as such an expert; the matter is one that must be left largely to the discretion of the trial court. In this case we cannot say that the trial court abused its discretion in excluding the evidence.

2. The court refused to allow in evidence, when first offered, a certain map tending to show the location and extent of the land of "Miki," as settled by the Commissioners of Boundaries in 1873 or 1874, upon the petition of A. F. Judd as guardian of Irene Ii, and of Grant 2616. Before the close of the trial the map was admitted in evidence for the purpose of showing the location of Grant 2616. The error, if any, in thus limiting the purposes for which the map was received, was not prejudicial, for there was other evidence in the case showing the location and extent of "Miki," and that that was the land the boundaries of which were settled as above set forth. None of these facts were disputed, and the court below found them as contended for by the plaintiff.

3, 4, 5 and 6.   Plaintiff's witness, M. D. Monsarrat, having qualified as an expert surveyor, and also, perhaps, as an expert in the Hawaiian language, was asked four questions:   (1) "I show you clause five in the will of John Ii, and ask you to tell us what land is meant?"   (2) "As a surveyor, I ask you to designate the piece of land which was given to A. F. Judd by clause five of the will"; (3) "I will ask you whether or not the land as described in clause five of this will, the land on this map in clause five of this will, adjoins the Waikiki Road?"   (4) "I will ask you whether or not the land which is designated in clause five of this will joins King street?"   The exceptions are to the refusal of the court to allow any of these questions. The determination of what land was devised by that clause involves the construction of its language and, if the different elements of the description conflict, a decision as to what element shall prevail, and what one be discarded as *false demonstration.* This is purely a matter of law which was for the court alone to determine. It was incompetent for the witness to express his opinion thereon, and this is what he would of necessity have done had

he been permitted to answer. It was not a question of expert surveying. It may be that if the witness had been asked as an expert in Hawaiian the meaning of the word "pa," the question would have been proper; but each of the questions as put necessarily involved an expression of opinion on a matter of law, and for that reason was objectionable.

7. W. L. Wilcox, a witness for the defendant, was permitted to answer the question: "As an expert in the Hawaiian language, I want to ask you what the word 'pa' in the fifth section of the will of John Ii means?" There was no error in this ruling. The preliminary examination of the witness showed that he had acted as Hawaiian interpreter in the Circuit and Supreme Courts of these Islands for about thirty years. He certainly qualified as an expert. The question as put was solely one of translation from Hawaiian into English, and did not call for any opinion on a matter of law, and in this respect is easily distinguishable from those considered on the third, fourth, fifth and sixth exceptions.

8. This exception is to the decision rendered in favor of the defendant, on the ground that it is contrary to the law and the evidence and the weight of the evidence. The ninth is to "the decision that the word 'pa' as used by the testator meant the enclosed lot, and that the design and intent of the testator was that A. F. Judd should take as his devisee all the land within the substantial enclosure." These two exceptions go to the merits of the case and may be considered together.

If the meaning of the word "pa" was a matter of fact to be determined, as any other question of fact would be, solely upon the evidence adduced, then we think that the evidence, though somewhat unsatisfactory, was sufficient to sustain the finding that in this instance it meant the enclosed lot,—all the land within the substantial enclosure. One of the two experts who testified on the subject said that the word, when used in connection with land, meant "fence" or "lot," according to the context, that as used in clause five it may mean either a fenced or an unfenced lot, that he could not say whether as there used it means an *enclosed* lot or otherwise, and that it does not nec-

essarily mean a fenced lot. The other expert testified that "pa" as used in the will means "premises," or "lot," "a definite piece of land, but not necessarily an enclosed piece of land, 'pa' would be 'fence,' where there is nothing to designate what 'pa' means." There was no evidence to sustain a finding that the word is ever used to describe an *unfenced portion* of an *enclosed* lot of land.

We believe, however, the true rule to be that our courts take judicial notice of the ordinary, usual and well known meaning of Hawaiian words,—words which have not acquired some unusual or technical signification in some trade or occupation or otherwise—and that, therefore, the court below was, and we are at liberty to consult standard dictionaries or other authorities in aid of its and our memory and understanding as to the meaning of the words under consideration. In Andrews' Hawaiian Dictionary, a recognized standard authority published in 1865, "pa" is defined thus: "The wall of a city; an enclosure, including the fence and the space inclosed; *pa* pohaku, a stone *wall; pa* laau, a stick *fence; pa* hipa, a sheep *fold.*" We believe that the word was employed in clause five by the testator as meaning the whole land within the stone wall, —the whole *enclosed* lot, as it was then and had been theretofore used—and that it was his intention to devise the whole of said lot to A. F. Judd. That intention is sufficiently expressed in the will. The word "kuai," if it was not used in its technical sense, must be rejected as a false description. It applies only to a part, though the greater part, and not to the whole of the land intended to be devised; the element of the description uppermost in the testator's mind was the *pa*, and not the *aina kuai.· Falsa demonstratio non nocet*, is a well established maxim.

It is urged by counsel for the plaintiff that the facts that Mr. Judd, as guardian of Irene Ii, in 1886, included the piece now in dispute in an inventory of property belonging to his ward, and that in 1873 or 1874 in a petition for the settlement of the boundaries of the land of Miki he alleged in substance that this piece belonged to Irene, and procured a Royal Patent to be granted in the name of John Ii in confirmation of the

title awarded by L. C. A. 8241, and that he at one time consented to an arrangement to the effect that Irene should convey the piece to his son Charles, show that Mr. Judd himself construed the will as not devising the property in question to himself.

These acts do show that Mr. Judd entertained a doubt as to whether or not he did acquire title as devisee, but evidence in the case likewise shows that Irene Ii also entertained doubts as to *her* title. Indeed, the question is one affording room for argument on both sides. Mr. Judd, as guardian, in entering the land in the inventory and in obtaining the settlement of boundaries, acted in the greatest of good faith, intending scrupulously to guard whatever interest, if any, his ward might have in the land. Construing the will as we do, we see in this evidence no reason to prevent the awarding of judgment in his favor, or in that of his representative.

It is not claimed that the present defendant, who is the sole devisee of Mr. Judd, is estopped, as matter of law, from now asserting title in herself; nor is adverse possession on the part of the plaintiff or its predecessors in interest relied upon for a recovery.

10. Plaintiff excepts to that portion of the decision in which it is stated that there was absolutely no evidence introduced in the case showing either directly or indirectly that the land in question was included in the devise to Irene Ii; and, 11, to the granting, only upon condition that plaintiff pay $200. attorney's fees of counsel for defendant and all costs, of plaintiff's motion for leave to re-open the case and introduce proof on the points (a) "that the devise to Irene Ii in the will of John Ii included the demanded premises if the same were not elsewhere devised to A. F. Judd," and (b) that Irene Ii was the sole heir at law of John Ii.

The clause of the will which, it is claimed by plaintiff, devises the piece in controversy to Irene, is that first above quoted. The land there described is an "Iliaina within Makiki," and the contention is that "Miki" is within Makiki. So far as evidence is concerned, we are unable to find any on the record

which tends to establish this alleged fact. The only witness who was examined on the point, a Hawaiian eighty-six years of age, who had resided on this Island since 1857, said, in answer to the question, "Is that place down there ever called Makiki?" "I never heard of it being called Makiki; all that I know of Makiki is mauka, and when floods would come along, of course the floods would run from Makiki down that way." Miki is in Pawaa, but it does not appear that Makiki includes Pawaa.

Assuming, however, what plaintiff desired to prove, that "Miki" and, therefore, the piece in dispute are within Makiki, or that the clause in question includes land in Pawaa not within the geographical limits of Makiki, we are nevertheless of the opinion that, there being other land which would pass to Irene under that clause as thus construed, the specific description and devise of the "pa" to A. F. Judd should prevail and carry with it the strip in question, although the same was originally a part of "Miki." This was also the view taken by the Circuit Court.

Regarding, for the purposes of this case, the conditional granting of the motion to re-open as in effect a denial of that motion, the error committed, if any, was not perjudicial to the plaintiff, for the reasons already stated, and for the further reason that the fact that Irene was the sole heir at law of John Ii was proven by other evidence, undisputed, in the case (see paragraph 5, page 2, of Exhibit J).

The exceptions are overruled.

*Magoon & Thompson, Kinney, Ballou & McClanahan* and *H. A. Bigelow,* for the plaintiff.

*Robertson & Wilder* for the defendant.