HENRY C. HAPAI, G. W. A. HAPAI AND NELSON K. SNIFFEN *v.* MAY K. BROWN, ARTHUR M. BROWN, HER HUSBAND, BLANCHE WALKER, JOHN WALKER, HER HUSBAND, WALTER F. DILLINGHAM, ROBERT W. ATKINSON, AND HENRY WATERHOUSE TRUST COMPANY, LIMITED, A CORPORATION.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MARCH 4, 1913.                    DECIDED MARCH 28, 1913.

ROBERTSON, C.J., PERRY, J., AND CIRCUIT JUDGE WHITNEY IN PLACE OF DE BOLT, J.

EVIDENCE—*judicial notice—Hawaiian language.*

> In this jurisdiction the Hawaiian language is not to be regarded as a foreign language, but as one of which the courts and judges must take judicial notice, and in rendering into English a will written in the Hawaiian language the courts and judges are at liberty to use their own knowledge of the Hawaiian language and may resort for assistance to such trustworthy sources of information as they may deem advisable, or to which their attention may be directed.

WILLS—*construction of—irreconcilable clauses.*

> Where in a will two clauses are found to be in irreconcilable conflict the later will generally prevail over the earlier unless thereby the manifest intent of the testator gathered from the will as a whole would be defeated.

SAME—*devise of income, rents and profits of land.*

A gift of the income or the rents, issues and profits of property
is to be construed as a gift of the property itself unless from
some language in the will it appears that the testator intended
something different.

OPINION OF THE COURT BY ROBERTSON, C.J.

The plaintiffs-in-error, who were also plaintiffs below, claim-
ing to own in fee simple certain undivided interests in the ahu-
puaa of Kaonoulu, on the island of Maui, in common with the
defendants, which claims of ownership were denied by the de-
fendants, brought an action to quiet their title in said land.
The venue was changed to the first judicial circuit, and trial by
jury was waived.

The plaintiffs as well as the defendants claim through one
Keaka, whose will was proved and admitted to probate on De-
cember 15, 1868.    The will was received in evidence upon the
plaintiffs' offer, and the defendants then moved for judgment
in their favor on the ground that one Paakuku was made the
sole devisee, and the plaintiffs, who it is admitted do not claim
through Paakuku, but through' her brothers and sisters, could
show no title in the land and, therefore, could not maintain the
action.    The motion was granted and judgment entered for the
defendants.

Keaka's will was written in the Hawaiian language and the
plaintiffs put in evidence a translation of it in the English
language which had been prepared by one of the regular inter-
preters of the court.    The trial judge adopted the translation
except in one respect and that is indicated herein by the italiciza-
tion of three words.    The will, according to the translation
finally adopted by the trial judge, is as follows:

"By the gracious favor of the King Kamehameha III whom
God appointed to reign, his *generous gift to his own people of*
land of them to bequeath, that is to say the Konohikis.

"I, Keaka, the undersigned, do hereby devise the land of
Kaonoulu, from the mountain to the sea unto my heirs here-
after as follows:

"Paakuku shall remain upon the land of Kaonoulu and have charge of it and the regulation of it as I have done on the said land. Her brothers and sisters are to live on the land under Paakuku as they have lived under me. No one of them shall oppose or deny the one I have *given the inheritance,* and everything pertaining to the land is to be had by the consent of the one I have appointed to have charge in my place. Let the younger brothers and sisters live under her pleasantly without evil thoughts which shall obstruct their living on the land.

"B. F. Sniffen shall not have the regulation of the land of Kaonoulu. I hereby forbid him acting as agent on said land. Let him live on his place and plant but under his wife in order that they may live comfortably on said land and let each cultivate as they may choose. The land of Kalihi, Oahu, and the appurtenances on that land of ours, it shall be for Paakuku and her brothers and sisters to have charge of and regulate.

"The horses, the two horses, Punalua and Manaihoolako, they shall be Paakuku's and her brothers and sisters and their heirs after them if the increase shall be sufficient to give them one horse apiece. They shall equally ride the horses until such time as there shall be one apiece.

"All the income of these lands and the Konohiki lands on these lands shall go to Paakuku and her brothers and sisters and their heirs after them.

"In witness of the foregoing I hereby affix my name, this 12th day of February, A. D. 1850 at Kalepolepo, Island of Maui, Hawaiian Islands."

There was some controversy in the court below as to the proper translation of the sentence in which the words above italicized occur. In the original will the sentence reads, "Aole hiki i kekahi o lakou ke kue, a hoole i ka mea a'u i haawi ai i ka hooilina," and the translation offered by the plaintiffs rendered it as "No one of them shall oppose or deny the one I have appointed as the heir." The defendants contend that the translation adopted by the court below must be regarded as a finding of fact resting upon substantial evidence and that as such it is binding on this court. It appears that the trial judge, acting of his own motion, but with the concurrence of counsel, called the interpreter who had made the translation for the plaintiffs

and examined him with reference to the matter of the proper translation of the words referred to, and the interpreter stated that he desired to modify his translation by substituting the words "given the inheritance" for "appointed as the heir." Another interpreter and two experts in the Hawaiian language were called and examined as witnesses in like manner as the first interpreter. The testimony of the witnesses, taken as a whole, tends to show that the Hawaiian words, "ka mea a'u i haawi ai i ka hooilina" are capable of being rendered either as "the one I have given the inheritance" or as "the one I have appointed as the heir." And if the question of the proper interpretation of the Hawaiian language into English is one of fact which depends on evidence the contention of counsel for the defendants would be correct. But, we hold, in this jurisdiction the Hawaiian language is not to be regarded as a foreign language, but as one of which the courts and judges must take judicial notice. In *John Ii Estate* v. *Judd,* 13 Haw. 319, 325, this court said, "We believe, however, the true rule to be that our courts take judicial notice of the ordinary, usual and well known meaning of Hawaiian words—words which have not acquired some unusual or technical signification in some trade or occupation or otherwise—and that, therefore, the court below was, and we are at liberty to consult standard dictionaries or other authorities in aid of its and our memory and understanding as to the meaning of the words under consideration." Such necessarily was the view entertained by the courts prior to the annexation of these islands by the United States, and, as shown by the above quotation, it has been maintained since the country became a Territory of the United States. We think the matter rests upon the same principle as that which requires our courts to take judicial notice of the laws and the principal facts of the history of Hawaii prior to the annexation of the islands. See *In re Title of Pa Pelekane,* ante, 175, 187. The question, what is the English meaning of a certain instrument written in the Hawaiian language is one of fact, but a fact of

which the court will take judicial notice. In rendering the language of this will into English the trial judge was at liberty to use his own knowledge of the Hawaiian language and also to call to his assistance the official interpreters of the court and, if it was deemed advisable, other experts. That counsel were permitted to examine these interpreters and other experts in open court did not alter the situation. This court, likewise, must determine for itself the meaning of this will, and in translating the Hawaiian words into English, we are at liberty to resort, if necessary or convenient, to such trustworthy sources of information as may be deemed expedient, or to which our attention may be directed.

We think the sentence about which the dispute centered is properly translated as "No one of them shall oppose or deny the one I have given the inheritance." This rendition gives the words "haawi" and "hooilina" what may be regarded as their primary signification (though the latter word probably is more often used as the equivalent of "heir"), and it accords quite as well with the rest of the paragraph in which the sentence occurs as the translation first made by the interpreter. There were some inaccuracies, however, in the translation of the paragraph immediately preceding the attestation clause. That paragraph, in the original will, reads "O ka waiwai apau i loaa mai no keia mau aina elua, a me na Poalima, maluna oia mau aina, e pili no ia mau pono ia Paakuku a me kona mau hoahanau, a me ko lakou mau hooilina mahope aku," and its proper rendition into English would be, "All the income from these two lands, including the Poalima (patches) on those lands shall belong to Paakuku and her relatives and their heirs thereafter." The word "hoahanau" ordinarily means "relative" or "kindred," and in this case it would, of course, include Paakuku's brothers and sisters. Possibly it should be limited to the brothers and sisters in this case. As to that we need not say at this time. The word "waiwai" is a term of wide application meaning "property," and as used in this will may very

properly be regarded as the Hawaiian equivalent for the English phrase "rents, issues and profits."

The provisions of the will which refer to the land in dispute are, (1) the devise to the "heirs" of the testatrix "hereafter as follows;" (2) those providing that Paakuku should remain on the land and have "the charge and regulation" of it as the testatrix had had, the other children to live on the land under Paakuku as they had lived under the testatrix, that they should live there without "evil thoughts" and should not "oppose or deny" the one to whom had been given "the inheritance," that everything pertaining to the land should be had by Paakuku's consent; and that each may cultivate the land "as they may choose;" and (3) the final provision bequeathing the income and profits of the land to Paakuku and her relatives and their respective heirs.

Counsel for the defendants contend that the will taken as a whole, and particularly the language of the second paragraph above referred to, discloses an intent on the part of the testatrix to give the land in fee simple to Paakuku, for, it is argued, Paakuku could not take charge of the land as the testatrix had done, nor could Paakuku's brothers and sisters live under her as they had lived under the testatrix unless Paakuku was given the fee simple title. Much stress is laid on what it is argued is clear, that is that "the right of the brothers and sisters to live on the land is subject to the say so of Paakuku."

The plaintiffs rely on the last paragraph of the will which, they claim, is in harmony with the first provision and constitutes a devise to Paakuku and her brothers and sisters in fee as tenants in common. Their counsel contend that the most that can be made of the intermediate paragraphs is that their provisions were intended to constitute Paakuku a trustee of the land for the benefit of herself and her brothers and sisters, but that if those provisions should be found to conflict with the final clause they must yield to it. The dictum of Chief Justice Allen in *Kahowai* v. *Paakuku,* 6 Haw. 124, referring to this

will and quoting the last clause, that "It was undoubtedly the intent of the testator that they (Paakuku and her brothers and sisters) should all have an interest in the property," also is invoked.

It is perfectly well settled that in order to ascertain the intent of a testator the will is to be considered as a whole; that effect should be given to every clause and every word, if possible; · that provisions which are in apparent conflict must be reconciled, if possible; and that in case two clauses are found to be in irreconcilable conflict the later shall prevail over the earlier unless it would defeat the manifest intent of the testator gathered from the will as a whole.

A gift of the income or the rents, issues and profits of property is to be construed as a gift of the property itself unless from some language in the will it appears that the testator intended something different. *France's Estate,* 75 Pa. St. 220, 224; *Davis* v. *Williams,* 85 Tenn. 646, 651; *Passman* v. *Guarantee Trust etc. Co.,* 57 N. J. E. 273, 276; *Mettler* v. *Warner,* 243 Ill. 600, 611; *Greene* v. *Wilbur,* 15 R. I. 251, 255; *Walker* v. *Hill,* 73 N. H. 254, 256. To hold that Paakuku was the sole devisee of the land would be to ignore the words "and her relatives and their heirs" contained in the final paragraph. The somewhat ambiguous provisions of the second paragraph are not such as should prevent the final paragraph from being given the usual construction and effect of such a provision. The testatrix probably thought that in creating the tenancy in common it was competent for her to designate one of the children as the head of the family with certain authority over the others; but the rights in and to the land which the language of the second paragraph, if given full effect, would give to Paakuku were utterly inconsistent with the equality of interest given to Paakuku's relatives by the final paragraph, and being ineffectual, as we have found, to qualify the devise contained in that paragraph, the earlier inconsistent provisions must be held to be inoperative. The first and last clauses are in harmony, and

they prevent the construction contended for by the defendants.

The judgment of the circuit court is reversed and the cause remanded for further proceedings.

*Lorrin Andrews* for H. C. Hapai and G. W. A. Hapai.

*R. P. Quarles* for N. K. Sniffen.

*A. A. Wilder* (*Thompson, Wilder, Watson & Lymer* on the brief) for defendants.