JOSEPH PAIKO AND JOSEPH PAIKO, JR., *v.* LIBERT H. BOEYNAEMS, BISHOP OF ZEUGMA, BISHOP OF THE ROMAN CATHOLIC CHURCH IN THE TERRITORY OF HAWAII.

SUBMISSION UPON AGREED STATEMENT OF FACTS.

SUBMITTED JUNE 23, 1914.                DECIDED OCTOBER 6, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

QUIETING TITLE—*statutory action—adverse claim.*
  One in possession of land claiming title thereto in fee simple under a will, may maintain an action to quiet title under R. L. Chap. 132, against one who, under the same will, claims a remainder in fee in the land contingent upon the death of the party in possession without heirs of his body, such claim being an adverse one within the meaning of the statute.
WILLS—*construction—repugnancy—general and specific provisions.*
  The rule that where two clauses in a will are in irreconcilable conflict the later one will prevail does not apply where a contrary intent has been manifested. Where there is an inconsistency between a general and specific provision the latter will prevail regardless of the order in which it stands in the will, the presumption being that the testator intended that the specific provision would operate upon the property mentioned in it and the general provision upon other property.

OPINION OF THE JUSTICES BY ROBERTSON, C.J.

The agreed statement of facts in this case sets forth that one Manuel Paiko died testate in Honolulu on the first day of April, 1890, leaving surviving him his widow, Domitila K. Paiko, and his son Joseph Paiko and grandson Joseph Paiko, junior, the plaintiffs herein; that Domitila K. Paiko died on October 23, 1906; that the said Joseph Paiko has never had a lawful child other than the said Joseph Paiko, junior, and the said Joseph Paiko, junior, has never had a lawful child; that Manuel Paiko's will was duly admitted to probate, the estate has been administered and the executor discharged; that the widow took under the will and did not claim dower; that

the estate of the said Manuel Paiko consisted of the premises at the corner of King and Maunakea streets, in Honolulu, referred to in paragraph two of the will, a houselot at Kolopo, Honolulu, referred to in paragraph three of the will, the land at Kuliouou, Oahu, referred to in paragraph four of the will, and some cash; that a piece of land situate at Lahaina, Maui, referred to in paragraph three of the will, was sold by the testator in his lifetime, and the premises at Kolopo were sold by the widow in 1904.

It is stipulated that judgment may be entered herein as in a statutory action to quiet title, determining the questions in controversy and declaring what title, interest and estate were given by the will to each of the parties hereto in the lands mentioned in paragraphs two and four of the will. The defendant is the bishop of the Roman Catholic church in the Territory of Hawaii.

The material portions of the will of Manuel Paiko, being paragraphs one, two, four, six and seven, are, as shown by the translation attached to the submission, as follows:

"One. For Mrs. Domitila M. Paiko, my much beloved wife all my real and personal property while she is alive, except those matters described in this instrument.

"Two. My piece of land houselot adjoining the makai corner of King and Maunakea streets on the Waikiki side for my son Joe Paiko and he may collect the rent of Fifty Dollars per month, and if he should die first, then, it goes to Joe Paiko Jr. but they cannot sell, dispose or mortgage this piece of land.

"Four. For Joe Paiko Jr. my grandchild all the piece of land situate at Kuliouou in the Ahupuaa of Maunalua, Oahu and everything thereon, after the death of his grandmother Mrs. Domitila M. Paiko.

"Six. After the death of my much beloved wife Mrs. Domitila M. Paiko, all my real property and all my personal property is to descend to my son Joe Paiko, and my grandson Joe Paiko, Jr. and to the heirs begotten of their bodies in a direct line from them.

"Seven. If they have no heirs begotten of their bodies, as

set forth in Section Six, then my administrators may (can) sell by public auction all of my real and all my personal property, and after deducting all expenses of such sale, then all of such property to go to the custody of the Bishop of the Roman Catholic Church, for the benefit of all Roman Catholic Churches throughout the Hawaiian Islands, and he may give a part thereof for the poor if he should deem proper."

Paragraph three of the will reads as follows:

"Three.   For Mrs. Domitila M. Paiko my much beloved wife all that piece of land houselot, and the buildings thereon, situate at Kolopo adjoining Nuuanu and Hotel streets, adjoining the houselot of J. M. Kapena immediately mauka, she may sell or convey it as she deems fit, or to devise to her heirs, while she is alive, my heirs and my administrators have no right to interfere, that being her dower right in all of my property, also devising (disposing) my piece of land houselot situate at Lahaina Maui being the piece bought by me from Antone Sylva Mason of Lahaina, Maui deceased."

The title to the property at Kolopo is not involved in the present controversy, and this paragraph is important only to the extent that it may throw light on the intent of the testator with reference to the other clauses of the will.

On behalf of the plaintiffs it is claimed that under paragraph two the title to the property therein mentioned vested in Joseph Paiko in fee simple conditional, subject to being defeated in favor of Joseph Paiko, junior, in the event of the father dying before his son, in which event the title would vest absolutely in the latter.   And as to the property at Kuliouou it is claimed that under paragraph four title passed to Mrs. Paiko, for life, remainder to Joseph Paiko, junior, in fee simple.   The defendant claims "that the estates given by the will to the son and grandson are as follows:   (a) to the grandson an estate for life only in the land of Kuliouou, beginning upon the death of his grandmother;   (b) to the son, an estate for life only in the King street property;   and (c) to the grandson, an estate for life only in the King street property, beginning upon the death of his father, if the grandson shall survive his father,"

and that it was the testator's intention "after the death of the son and of the grandson, to give the remainders in the King street property and in Kuliouou to the heirs of their bodies in a direct line and if none such survive them then to the bishop of the Roman Catholic church for the benefit of that church." Thus it is seen that the title and right of possession of the plaintiffs during the terms of their respective lives is conceded, the defendant's claim to the remainder in the two parcels of land being contingent and depending upon the death of the testator's son and grandson without leaving "heirs begotten of their bodies in a direct line," the contention being that "heirs of their bodies" were used as words of purchase and not of limitation. After the case had been submitted, the court entertaining a doubt whether a present controversy existed and whether the case presented anything more than a moot question, requested counsel to file briefs on the point whether, under the circumstances, the court should exercise jurisdiction and proceed to construe the will. The question is whether the claim of a contingent interest in certain lands, where the contingency may never occur, may be made the basis of an action to quiet title to such lands under chapter 132 of the Revised Laws, by one in possession claiming ownership in fee simple. In *Paiko* v. *Boeynaems*, 21 Haw. 196, this court held that as the respective claims of these parties were of strictly legal interests in the land a court of equity was without jurisdiction to construe this will, the point having been raised by demurrer. The present submission is made in lieu of an action to quiet title under the statute. Section 2085 of the Revised Laws provides that "Action may be brought in any of the circuit courts by any person against another person who claims adversely to the plaintiff an estate or interest in real property, for the purpose of determining such adverse claim," and section 2086 provides that "Any person may be made a defendant in such action who has or claims an interest in the property adverse to the plaintiff, or who is a necessary party to a complete determination or settle-

ment of the question involved therein." These provisions have heretofore been given a construction and effect consonant with their broad terms. See *Kahoiwai* v. *Limaeu,* 10 Haw. 507; *Mossman* v. *Dole,* 14 Haw. 365, 369; *Allen* v. *Lucas,* 15 Haw. 52. Referring to a similar statute, the supreme court of California, in *Head* v. *Fordyce,* 17 Cal. 149, 151, said, "the act intended to embrace every description of claim whereby the plaintiff might be deprived of the property, or its title clouded, or its value depreciated, or whereby the plaintiff might be incommoded or damnified by the assertion of an outstanding title already held or to grow out of the adverse pretension. The plaintiff has a right to be quieted in his title whenever any claim is made to real estate of which he is in possession, the effect of which claim might be litigation or a loss to him of the property." In *Goldberg* v. *Taylor,* 2 Utah 486, 491, the court said, "The words 'claims an estate or interest' are used in a broad sense, and are not technical in their meaning, and were evidently intended to embrace every species of adverse claim set up by a party out of possession whereby the plaintiff's enjoyment of his property may be interfered with." It is manifest that the defendant's claim, though contingent in character, must tend to depreciate the value of the titles claimed by the plaintiffs, and that it is of importance to the plaintiffs that the validity of his claim be passed upon and settled. In *Kimmel* v. *Shaffer,* 219 Pa. St. 375, 379, where the claim of the defendant was of a contingent right upon the death of the life tenant, the court said, "But this though it refers to the future is still a present dispute of the title by which the plaintiff holds possession and is, therefore, within the act. 'What the party in possession needs and what the act gives him is the right to a present adjudication of his title.' *Canal Co.* v. *Genet,* 169 Pa. 343." And in *Ball* v. *Woolfolk,* 175 Mo. 278, 285, it was held that a statute authorizing the bringing of an action "against any person, having or claiming to have any title, estate or interest" in the premises in dispute "is broad enough to include a future or

contingent interest." We are of the opinion that the defendant "has or claims an interest in the property adverse to the plaintiffs," within the meaning of the statute, and that the plaintiffs would be entitled to institute against him an action "for the purpose of determining such adverse claim," and that the defendant is "a necessary party to a complete determination" of the question involved.

In studying this will in the endeavor to ascertain from its terms the intention of the testator we find considerable difficulty. The will is, of course, to be construed as a whole and any apparent inconsistencies are to be reconciled if possible. There is some ambiguity compelling construction. Some questions have been discussed, however, which we are not required to decide. Thus, for example, the plaintiffs are not adversary parties in this proceeding and we are not to decide, as between them, what their respective rights are under paragraph two in the property on King street. It will be necessary only to ascertain what, if any, interest the defendant has in the lands in question. The defendant's claim can be asserted only under paragraph seven of the will which is to be read in conjunction with paragraph six, and we assume that if the event shall happen upon which the interest claimed by the defendant would become vested, the defendant would be entitled to the possession of the lands and not have merely a right to the proceeds of the sale of them.

Paragraph seven applies to the same property that paragraph six applies to, and none other, and we think paragraph six may properly be regarded only as an independent devise, general in character, applicable to property not otherwise disposed of—applicable, probably, to the land at Lahaina mentioned in paragraph three had it not been sold by the testator. It certainly would have been applied to any property acquired by the testator subsequent to the execution of the will had he left any such. The contention of counsel for the defendant that what the testator meant by paragraph six was that "the King

street property he had given to his son for life was after his death to go to the remaindermen named, that Kuliouou which he had given to his grandson for life, was after the latter's death to go to the remaindermen named, and that the Nuuanu street property was after the death of the widow to go to the son and grandson in common and after their death to the remaindermen named" cannot be sustained upon the language used by the testator. To obtain the effect contended for the paragraph would have to be re-written. Paragraph six, by its very terms, has application only to lands in which the widow was given a life estate, so it could not apply to the property mentioned in paragraph two in which the widow was given no interest whatever. We can find no warrant for a construction of that paragraph which would constitute the son and grandson tenants in common (after the death of the widow) as to the property mentioned in paragraph three and yet recognize separate interests in them as to the lands mentioned in paragraphs two and four. We think that the language of the sixth paragraph requires a holding that as to any and all property to which it was designed to apply the effect necessarily was to create a tenancy in common in the son and grandson. By paragraph one the testator devised to his wife for life all his real and personal property "except those matters described in this instrument." This exception is a literal translation of the words "koe nae na mea i hoakakaia ma keia palapala," and may be understood as equivalent to the phrase "except as herein otherwise provided." As it is clearly "otherwise provided" in paragraph two we must hold that the widow took no interest in the King street property, that paragraph six does not apply to that property, and that the defendant has no interest therein under paragraph seven, or otherwise.

Under paragraph four the widow should be held to have taken an estate for life by necessary implication. This is not disputed. The grandson took a remainder in the property mentioned in that paragraph upon the death of his grandmother.

The devise to the grandson being an indefinite one the question whether it was intended that he should take in fee simple or for life only is to be ascertained from the will taken as a whole. *King* v. *Hawaiian Trust Co.* 21 Haw. 619, 622. An indefinite devise followed by a limitation over upon the death of the devisee would ordinarily be held to create a life estate in the first taker. *Paaluhi* v. *Keliihaleole,* 11 Haw. 101; *Mouritz* v. *Lewis,* 12 Haw. 19; *Robinson* v. *Aheong,* 13 Haw. 196, 200. And where there is no limitation over or other restriction a devise of a "piece of land" will give to the devisee title in fee simple. *Keanu* v. *Kaohi,* 14 Haw. 142. May paragraph six be regarded as a limitation over upon the death of the grandson without children as to the Kuliouou property? We think not, for reasons stated above. If that paragraph is to be taken as referring to the land mentioned in paragraph four there is a repugnancy for by the earlier clause the grandson would take the remainder upon the death of the widow, whereas by the later provision the son and grandson would, upon her death, take as tenants in common. If it is a case of apparent repugnancy the defendant would not be benefited for the reason that the testator will not be held to have intended the earlier specific provision to have been abrogated by the later general provision. The rule that where two clauses are in irreconcilable conflict the later one will prevail does not apply where a contrary intent has been manifested. *Hapai* v. *Brown,* 21 Haw. 499, 505. *In re Ehlers' Will,* 155 Wis. 46, 49. It is a reasonable presumption that the testator intended that the specific provision would operate upon the property named in it and the general provision upon other property. Where there is an inconsistency between a general and specific provision the latter will prevail regardless of the order in which it stands in the will. 40 Cyc. 1418; *In re Donner,* 65 N. J. E. 691, 697; *Board* v. *Stead,* 259 Ill. 194, 208; *Waring* v. *Bosher,* 91 Va. 286, 291; *Howard* v. *Evans,* 24 App. Cas. (D. C.) 127, 135; *White* v. *McCracken,* 87 Mo. App. 262; *Hurst* v. *Weaver,* 75 Kan. 758, 762. The natural

Paiko v. Boeynaems, 22 Haw. 233.

construction of paragraph four, whereby the testator devised the land at Kuliouou to his wife for life and upon her death to his grandson, would be that the grandson was intended to take the remainder in fee simple. This intent is not to be nullified by the general terms of the subsequent paragraph.

What effect the fact that, as shown by the agreed facts, Joseph Paiko has an "heir begotten of his body in a direct line," to wit, a son, would have upon the defendant's claims under paragraph seven we need not inquire in view of the conclusion we have reached.

It follows from what has been said that the defendant took no interest in the lands mentioned in paragraphs two and four of this will.

Judgment accordingly.

*J. Lightfoot* for plaintiffs.

*A. D. Larnach* and *A. Perry* for defendant.