ANTHONY LIDGATE AND H. M. VON HOLT, TRUSTEES UNDER THE WILL OF CHARLES NOTLEY, DECEASED, *v.* EMMA DANFORD, MARIA NOTLEY HUGHES, DAVID F. NOTLEY, PATRICK GLEASON, TRUSTEE FOR DAVID F. NOTLEY, VICTORIA M. K. VANNATTA, LILY NOTLEY HEEN, WILLIAM K. NOTLEY, JOHN K. NOTLEY, HENRY WATERHOUSE TRUST COMPANY, LIMITED, ADMINISTRATOR OF THE ESTATE OF MARY K. NOTLEY, DECEASED, AND H. M. VON HOLT, ADMINISTRATOR WITH THE WILL ANNEXED OF THE ESTATE OF MELISA NOTLEY, DECEASED.

No. 931.

SUBMISSION WITHOUT ACTION.

ARGUED APRIL 18, MAY 16, 1916.                DECIDED MAY 31, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

WILLS—*construction—conflicting clauses—general and specific provisions.*

A conflict between two provisions in a will is not to be regarded as irreconcilable unless, after the application of the several rules of construction, substantial harmony is found impossible. Where there is an inconsistency between a general and a specific provision both may operate, the latter upon the property named in it and the former upon other property.

SAME—*distribution per capita.*

Where the income from certain property devised in trust is directed to be paid to the children and certain named grandchildren of the testator in equal shares the beneficiaries will take *per capita* unless the will shows a different intent on the part of the testator.

SAME—*refusal of widow to accept testamentary provision—acceleration.*

Where a will provides for the payment to the testator's widow for life of a share of the income of the residue of the estate

which is devised in trust, such income, upon her death, to be paid to other beneficiaries, and the widow elects to take her dower, the other beneficiaries become immediately entitled to receive all the income from so much of such property as may remain.

WORDS AND PHRASES—*"share and share alike."*

The phrase "share and share alike" ordinarily imports an equal division in severalty.

### OPINION OF THE JUSTICES BY ROBERTSON, C.J.

This is a submission upon agreed facts of a controversy which has arisen under the will of Charles Notley, late of Paauilo, Hawaii, deceased. The provisions necessary to be considered in the determination of the questions raised are included in the sixth paragraph of the will which reads as follows:

"Sixth. All the rest, residue and remainder of my estate, real, personal or mixed, and wherever situate, I give, devise, and bequeath unto the said Thomas Rain Walker and Anthony Lidgate, in trust nevertheless for the uses and purposes herein set forth, that is to say: to pay the rents, issues and profits arising from and out of my said estate in manner following:

(A) "One-sixth thereof to my wife Mary K. Notley during the term of her natural life, such payment to be in lieu of her dower right in my estate, and from and after the death of my said wife, the said one-sixth share or part of said income shall be divided among the surviving devisees named in this my will in the shares and proportions hereinafter set forth and limited to each of them.

(B) "One-sixth thereof to my son William during the term of his natural life, and from and after the death of my said son William then to Melisa, the wife of said William, during the term of her natural life; and from and after the death of the said Melisa, the said one-sixth share or part of said income shall be divided among the surviving devisees share and share alike.

(C) "One-sixth thereof unto the children of my son Charles Notley Jr., named John, Victoria Maria, Lilly and

William, share and share alike. And I hereby direct my said trustees not to pay any of said share of said income unto any of the above named children of my said son Charles Notley, Jr., until such time as each of them, being males, shall arrive at the age of twenty-one years, and being females, shall arrive at the age of eighteen years; and that in the meantime and until the happening of such event as to each of said children, I direct my said trustees to keep said one-sixth share of said income invested in such securities as they or their successors may think proper, and the income, rents, issues or profits thereof shall be divided equally among said children upon the arrival of them at the age of twenty-one years and eighteen years respectively as hereinbefore limited. And in the event of the death of any of said children before the arriving at the ages aforesaid, or in the event of their death after the arrival at the ages aforesaid, the heirs of such children shall take the share of the child so dying.

(D) "One-sixth thereof unto my daughter Maria, the wife of Thomas Hughes, during the term of her natural life, free from all control or liability of the marital rights of any husband.

(E) "One-sixth thereof to my son David Fyfe Notley, during the term of his natural life, and

(F) "One-sixth thereof to my niece Emma Danford, nee Mullinger, during the term of her natural life free from all control or liability of the marital rights of any husband.

(G) "And from and after the death of all my said children and my said niece Emma Danford, nee Mullinger, I hereby direct my said trustees or their successors to convey all of my estate among the heirs-at-law of my said children William, Maria, David Fyfe, and my said niece Emma Danford, nee Mullinger, and the children of my said son Charles Notley, Jr., namely: John, Victoria Maria, Lilly and William, share and share alike.

(H) "And I direct, that until the death of all the legatees last named, the income accruing from said trust estate, shall, until such event happen, be paid among the heirs at law of all such as may have died before the death of the survivor of said last named legatees."

For the sake of convenience in this opinion the several clauses after the first have been designated by letters of the alphabet. The parties to this submission, besides the trustees under the will, are the beneficiaries named in clauses C, D, E, and F; the administrator of the estate of the widow who was named in clause A; the administrator of the estate of Melisa Notley who was named in clause B; and Patrick Gleason, trustee for the aforesaid David Fyfe Notley.

The statement of facts shows that the testator died on May 2, 1902; that the testator's widow elected to receive her dower in the estate instead of the testamentary provision; that the income has therefore been divided into fifths instead of sixths as provided in the will, and until the death of Melisa Notley was paid over to the several beneficiaries under clauses B, C, D, E, and F; that the children of Charles Notley Jr. named in clause C have each attained the age of twenty-one years; that William Notley died on August 21, 1913, without issue, leaving surviving his mother and his wife as his heirs at law; that Melisa Notley died on October 12, 1915; that Mary K. Notley, the testator's widow, died on November 16, 1915; and that one-fifth of the income of the estate accruing between the date of the death of Melisa and the date of this submission (February 29, 1916) amounted to $2540.98.

The controversy is as to who is entitled to the share of the income which was payable under clause B to the son William and his wife Melisa during their respective natural lives since the latter's death. It is claimed by the administrator of the estate of Mary K. Notley and the administrator of the estate of Melisa Notley, that the said Mary and Melisa, as heirs at law of William Notley, took under clause H, on the death of William, vested interests in one-fifth of the income for the period ending with the final distribution of the trust estate under clause G, the enjoyment

of such interest being postponed until the death of Melisa. The beneficiaries named in clauses C, D, E and F claim that under clause B they are entitled to said share of the income for said period from the death of Melisa to the final distribution of the estate. It is further claimed by the beneficiaries named in clauses D, E and F that under clause B they are entitled to three-fourths of said share of the income during said period, and that the beneficiaries named in clause C are entitled only to the remaining one-fourth of said share to be divided between them. It is further claimed by the beneficiaries named in clause C that under clause B they are each entitled to one-seventh of said share of the income, and that the beneficiaries named in clauses D, E and F are entitled to only one-seventh thereof each.

The first question presented is as to the proper construction of the language of clause B that "from and after the death of said Melisa, the said one-sixth share or part of said income shall be divided among the surviving devisees share and share alike," when considered in connection with the apparently conflicting provision of clause H, "that until the death of all the legatees last named, the income accruing from said trust estate shall, until such event happen, be paid among the heirs at law of all such as may have died before the death of the survivor of said last named legatees." On behalf of the administrators of the estates of the two widows it is argued that, ignoring the inaccurate use of the word "devisees" in clause B and of the word "legatees" in clause H, there is no real inconsistency between the two clauses referred to; that the testator, in effect, defined the words "surviving devisees" of clause B as meaning "the heirs at law" mentioned in clause H; that as the heirs at law of the son William will partake in the final disposition of the estate under clause G there is nothing in the will to warrant taking the income now in dispute from those heirs pending the death of the last surviving child; that the

clearly expressed intention that the heirs at law of each beneficiary should take the share of their respective ancestors should not be made to yield to the alleged ambiguous phrase "surviving devisees;" that the general intent shown by the entire will that the estate should be kept intact for the benefit of the several beneficiaries and their respective heirs should prevail over the ambiguously expressed particular intent shown by the language of clause B; and that if the two clauses are irreconcilable the later in position should prevail over the earlier. We think these contentions cannot be sustained. In clause A, by which the testator gave to his wife, in lieu of dower, one-sixth of the income of the property devised and bequeathed to the trustees during her life, it was provided that that share, upon her death, "shall be divided among the surviving devisees named in this my will in the shares and proportions hereinafter set forth and limited to each of them." It is very evident that by the words "surviving devisees" there used the testator meant the beneficiaries to whom shares of the income were given in and by the succeeding clauses of paragraph 6 in certain proportions therein set forth and limited to them respectively. And it is obvious, we think, that the words "surviving devisees" in clause B were used in a like sense, though the additional words used in clause A were not repeated. Where the intention of the testator can be ascertained from his will the inaccurate use of words will not prevent the carrying out of his intent. The point then is whether the share of income disposed of by clause B, from the death of Melisa, should go to the surviving devisees, so-called, named in the four following clauses of the paragraph or to the heirs of William. There is an apparent conflict between clauses B and H, and if they cannot be reconciled the later will prevail over the earlier unless that would defeat the manifest intent of the testator gathered from the will as a whole. *Hapai* v. *Brown*, 21 Haw. 499, 505. But it is in-

cumbent upon the court to reconcile the repugnancy if that can be done. A conflict between two provisions in a will is not to be regarded as irreconcilable unless, after the application of the several rules of construction, substantial harmony is found impossible. We are satisfied that the two provisions can be harmonized upon the rule of construction that where there is an inconsistency between a general and a specific provision the latter will prevail regardless of the order in which it stands in the will, as it generally will be a reasonable presumption that the testator intended that the specific provision would operate upon the property named in it and the general provision upon other property. *Paiko* v. *Boeynaems,* 22 Haw. 233, 240; *Magoon* v. *Kapiolani Estate,* 22 Haw. 510, 514. The rule that in case of doubt a will should be construed in favor of a general or primary intention rather than a particular or secondary one does not apply "where there is a clearly expressed intention to effect another purpose distinct and different from the general intention or object, as in such a case the particular intention will prevail." 40 Cyc. 1393. See *Pickering* v. *Langdon,* 22 Me. 413, 430; *Graham* v. *Graham,* 23 W. Va. 36, 42; *Behrens* v. *Baumann,* 27 L. R. A. N. S. (W. Va.) 1092. Clause B differs from clauses D, E and F in that by it provision was made for the wife of William, whereas no such provision was made for the spouses of the daughter, son or niece named in the other clauses. By it also the testator made a special provision in regard to the disposition of the share of the income there given to William and Melisa upon the death of the latter. That provision was intended to operate upon that share alone while the general provision of clause H would apply to the shares covered by clauses D, E and F. There is a specific provision in clause C which controls the devolution of the shares given to the grandchildren therein named. Clauses B and C each made a final disposi-

tion of one-sixth of the income, and neither required the
supplementary provision of clause H to make it complete.
The application of the rule of construction above referred
to, we have no doubt, will accomplish the intent which the
testator has disclosed by his will. The beneficiaries named
in clauses C, D, E and F are entitled to receive from and
after the death of Melisa Notley the share of income given
by clause B.

The next question to be decided is as to how that share
is to be divided among those whom we hold are entitled to
it. The argument made on behalf of the beneficiaries named
in clauses D, E and F is that, taking the will as a whole,
there is apparent a general intention on the part of the tes-
tator to treat the grandchildren named in clause C as stand-
ing in the place of their father, Charles Notley, Jr., to
whom nothing was given by the will, and to give to them
the proportion of the income which it would be supposed
would otherwise have been given to their father, to wit, a
one-sixth share, and an equal division with the other chil-
dren and niece under clause B after the death of Melisa. It
may be conceded that such an intent might likely have been
entertaind by the testator, and that a provision expressing
such an intent would reasonably have been expected under
the circumstances. But, as it was remarked in *Hall* v. *Hall,*
140 Mass. 267, 270, "the greater reasonableness of a differ-
ent disposition, or a consideration of what it is likely, on
general principles, that a testator would have wished, can-
not be allowed to change the interpretation of the words
used, if the meaning is plain apart from such considera-
tions;" and, as said in *Wells* v. *Newton,* 67 Ky. 158, "the
assumed unreasonableness of giving to a grandchild as much
as to a child can not control or neutralize the construction
of the testamentary language." The rule that a primary or
general intent will, in case of conflict and doubt, prevail
over a secondary or particular intent has more influence in

deciding a question as to what property or what estate in certain property certain beneficiaries are to take than in determining what persons are to take under a will. It is necessary, therefore, to examine the will with the view to ascertain whether, as a whole, it manifests an intent on the part of the testator that the children of the son Charles should stand, as it were in their father's place and together take, under clause B, a share equal to that of each of the beneficiaries named in clauses D, E and F, as against the language of clause B that the share of the income given to William and Melisa shall, upon the death of the latter, be divided among the other beneficiaries "share and share alike." It is true that the share of income given to the children of Charles together by clause C is the same proportion (one-sixth) as that given to each of the testator's children and his niece by the other clauses. But we find nothing in the will to indicate that that principle of division was intended to operate generally or in special connection with the final sub-division of the one-sixth of the income under clause B. The words "the said one-sixth share or part of said income shall be divided among the surviving devisees *share and share alike,*" used in clause B, are in rather sharp contrast to the words "the said one-sixth share or part of said income shall be divided among the surviving devisees named in this my will *in the shares and proportions hereinafter set forth and limited to each of them,*" used in clause A. We see nothing in the will to indicate that the different phraseology was not used advisedly.

In 40 Cyc. 1490, it is said, "Where the subject of a testamentary disposition is directed to be 'equally divided' or to be divided 'share and share alike' or where similar words are used which indicate an equal division among a class of persons, the persons among whom the division is to be made take *per capita,* unless a contrary intention is discoverable from the will." Where the gift is to classes as such, words

denoting equality of division may apply to the respective classes without regard to the number of persons in each class. See 40 Cyc. 1491. The phrase "share and share alike" ordinarily imports an equal division in severalty. *Daggett* v. *Slack*, 8 Met. 450, 454; *Shattuck* v. *Wall*, 174 Mass. 167, 169; *Bishop* v. *McClelland*, 44 N. J. E. 450, 453; *Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125, 129. In the will in hand the testator used the phrase in that sense in the fifth paragraph which related to the division of certain insurance money, and he used it in the same sense in clause C of the sixth paragraph. He used the phrase again in clause G, but a question as to the construction of that clause may arise upon the termination of the trust and we do not feel called upon to pass upon that now. Where property is devised to children and grandchildren it has been held that the division among them is to be *per capita* even though the beneficiaries are not named individually, unless a contrary intent appears in the will. *Farmer* v. *Kimball*, 46 N. H. 435; *Kimbro* v. *Johnston*, 15 Lea 78; *Perdue* v. *Starkey*, 86 S. E. (Va.) 158; *Kling* v. *Schnellbecker*, 107 Ia. 636; *Brittain* v. *Carson*, 46 Md. 186. In the case at bar the children of the son Charles are named individually, and there is abundant authority to the effect that where such is the case and words denoting equality of division are used the beneficiaries take *per capita*. *Hardy* v. *Roach*, 190 Mass. 223; *Wells* v. *Newton*, 67 Ky. 158; *Crawford* v. *Redus*, 54 Miss. 700; *Marsh* v. *Dellinger*, 127 N. C. 360; *Kean's Lessee* v. *Hoffecker*, 29 Am. Dec. (Del.) 336. The language of clause B is as clear as, if not clearer than, that used in clause A. It is not ambiguous. It does not conflict with any other provision. Nor is it opposed to any clear general intent manifested in the will taken in its entirety. We hold, therefore, that the beneficiaries named in clauses C, D, E and F take the income in question, i. e., the share payable under clause B, in equal shares *per capita*.

As above stated, the testator's widow declined the testamentary provision and elected to take her dower, and the trustees have therefore distributed the income in shares of one-fifth each. This we hold was proper. Under clause A the widow's share of the income, had she taken it, would, upon her death, have gone to the other beneficiaries to be divided in accordance with the proportions of the income given to them respectively by the other clauses of the will. The amount of the income distributable under the will was decreased through and by the widow's election. The will contains no provision covering the contingency, but upon the doctrines of compensation and acceleration the beneficiaries, other than the widow, became entitled to receive the entire income of the residuary estate remaining. "When the rejection by a widow of the provisions made for her by her deceased husband's will results in the diminution or contravention of devises and legacies to other persons, the renounced devises and legacies given by the will to the widow should be used to compensate, so far as may be, those whom her election disappoints." 11 A. & E. Enc. Law (2nd ed.) 117. "As a general rule, when the widow has dissented from the will of her husband, by which certain property was given to her for her life, with a limitation over to other persons, those persons to whom the property was limited over by way of remainder are entitled to the immediate enjoyment of so much of such property as remains after satisfying the claims of the widow; for by such acceleration of enjoyment the remaindermen are, in part at least, compensated for the diminution of their devises or legacies." Id. 118, 119. See *Hall* v. *Smith,* 61 N. H. 144; *Shreve* v. *Shreve,* 176 Mass. 456; *Beideman* v. *Sparks,* 61 N. J. E. 226; *Randall* v. *Randall,* 37 Atl. (Md.) 209.

Judgment may be entered herein in accordance with the views above expressed.

*R. B. Anderson* (*Frear, Prosser, Anderson & Marx* on the brief) for the trustees.

*A. A. Wilder* (*Stanley & Wilder* on the brief) for Emma Danford.

*J. W. Cathcart* (*Thompson, Milverton & Cathcart* on the brief) for Maria Notley Hughes, David F. Notley and Patrick Gleason, Trustee.

*A. Lindsay, Jr.* (*Lindsay & Lymer* on the brief) for the administrators of the estates of Mary K. Notley, deceased, and Melisa Notley, deceased.

*J. T. DeBolt* for the children of Charles Notley, Jr. other than William.

*William Notley* submitted to the judgment of the court.