EMIL C. PETERS AND PETER K. McLEAN, TRUS-
TEES UNDER THE WILL AND OF THE ESTATE
OF CHARLES NOTLEY, DECEASED *v.* WILLIAM
COLE VANNATTA AND HIS WIFE VICTORIA
MARIA K. VANNATTA NEE NOTLEY; WILLIAM
CHARLES K. VANNATTA AND HIS WIFE HAR-
RIET L. VANNATTA NEE WOND; ALBERT C.
HOLT AND HIS WIFE ROSE PIILANI HOLT NEE
VANNATTA; HENRY JAMES HOLLINGER AND
HIS WIFE ALICE EMMA N. HOLLINGER NEE
VANNATTA; DAVID AKANA ESPINDA, JR.,
AND HIS WIFE VICTORIA MARIA K. ESPINDA
NEE VANNATTA; JOHN K. McKEAGUE AND HIS
WIFE PATRICIA ANN K. McKEAGUE NEE VAN-
NATTA; VERNAL K. PRATT AND HIS WIFE
DOLLY LOU PRATT NEE ESPINDA, A MINOR;
WILLIAM K. NOTLEY, A MINOR, BY HAWAIIAN
TRUST COMPANY, LIMITED, AN HAWAIIAN
CORPORATION, THE GUARDIAN OF HIS ES-
TATE; WILLIAM CHARLES VANNATTA, JR., A
MINOR; HARRIET HAUNANI VANNATTA, A
MINOR; GEORGE IVAN VANNATTA, A MINOR;
LAVINA KAUI VANNATTA, A MINOR; ROSE-
WYLE NAILIMA LISHMAN, A MINOR; VALMER
A. N. HOLLINGER, A MINOR; VICTORIA MARIA
K. HOLLINGER, A MINOR; HENRY JAMES HOL-
LINGER, JR., A MINOR; MICHAEL T. HOLLIN-
GER, A MINOR; DAVID AUGUSTUS ESPINDA
III, A MINOR; VERNAL K. PRATT, JR., A MINOR;
MONA N. McKEAGUE, A MINOR; PAULETTE N.
McKEAGUE, A MINOR; FRANCIS F. RIESS AND
HIS WIFE, LILLY RIESS NEE NOTLEY; JULIUS
A. SOFRANIK AND HIS WIFE DOROTHY K. M.
SOFRANIK NEE HEEN; JOHN K. HEEN AND

HIS WIFE ELIZABETH HEEN NEE STEWARD; HANNAH M. C. HEEN, A MINOR; HARRIET K. MOKUAU NOTLEY; JOHN K. NOTLEY, JR. AND HIS WIFE DELILIA NOTLEY NEE PEREIRA; HARRIET K. NOTLEY; ROBERT C. K. NOTLEY, AND HIS WIFE YVONN NOTLEY NEE CATHCART; OSWALD LAU AND HIS WIFE JASMINE N. LAU NEE NOTLEY; LLEWELLYN G. NOTLEY; GWENDOLYN L. NOTLEY; WILLIAM VICKERY AND HIS WIFE MELISSA H. VICKERY NEE NOTLEY; HELEN N. V. JOSEPH NEE NOTLEY; JOHN M. KERR AND HIS WIFE NANCY KERR NEE NOTLEY; JOHN K. NOTLEY III, A MINOR; SAXON L. NOTLEY, A MINOR; LEROY C. NOTLEY, A MINOR; ERIC C. NOTLEY, A MINOR; VAUGHN A. NOTLEY, A MINOR; ROBERT C. K. NOTLEY, JR., A MINOR; STEPHANIE LOIS LAU, A MINOR; WILLIAM K. VICKERY, A MINOR; EDDIE D. VICKERY, A MINOR; WILLIAM NOTLEY GUNDERSON; JOHN M. KERR, JR., A MINOR; HANNAH M. KERR, A MINOR; SERAFIN MACTAGONE AND HIS WIFE MARVELIE MACTAGONE NEE GUNDERSON; MICHELLE M. MACTAGONE, A MINOR; HENRY T. HUGHES AND HIS WIFE ANGELA MARIE HUGHES NEE GUICHEBARD; EMMA V. HUGHES; CLARENCE N. HUGHES AND HIS WIFE AMELIA HUGHES NEE HOLT; CHARLES E. HUGHES AND HIS WIFE TILLIE L. HUGHES NEE BRANDT; WILLIAM N. HUGHES; HENRY T. HUGHES, JR., AND HIS WIFE VIOLET K. HUGHES NEE KIMEKEO; JAMES K. WOOLSEY AND HIS WIFE HENRIETTA K. WOOLSEY NEE HUGHES; THELMA LOIS HUGHES, A MINOR; BRANDT K. HUGHES;

CHARLES E. HUGHES, JR.; THOMAS H. HUGHES, A MINOR; CLAIRE K. HUGHES, A MINOR; EMMLYN V. K. HUGHES, A MINOR; JAMES K. WOOLSEY, JR.; THOMAS H. WOOLSEY, A MINOR; SAM ALAMA AND HIS WIFE HELEN KAWAILANI ALAMA NEE NOTLEY; NATHANIEL WARD AND HIS WIFE YVONNE K. WARD NEE ALAMA; WILLIAM ERIC DANFORD AND HIS WIFE RONA F. DANFORD NEE KATTERFELVT; JAMES SHARPE DANFORD AND HIS WIFE ETHEL DANFORD NEE EWING; HENRY VINCENT DANFORD AND HIS WIFE MAY DANFORD NEE RAMSAY; RONA ANN DANFORD, A MINOR; LORNA SHARPE DANFORD, A MINOR; WILLIAM ERIC DANFORD, JR., A MINOR; MAYVIN DANFORD, A MINOR; HENRY GRANVILLE DANFORD, A MINOR; BARBARA ELLEN DANFORD, A MINOR; BISHOP TRUST COMPANY, LIMITED, AN HAWAIIAN CORPORATION, TRUSTEE OF THE McINERNY FOUNDATION; C. S. WO AND SONS, A COPARTNERSHIP; TERRITORIAL BUILDING AND LOAN ASSOCIATION, LIMITED, AN HAWAIIAN CORPORATION; THE BISHOP NATIONAL BANK OF HAWAII AT HONOLULU, A NATIONAL BANK; AND HAWAIIAN TRUST COMPANY, LIMITED, AN HAWAIIAN CORPORATION, AS TRUSTEE OF THE INTER VIVOS TRUST CREATED BY HELEN KAWAILANI ALAMA BY TRUST INSTRUMENT OF MARCH 16, 1926, AS AMENDED, OF WHICH HELEN KAWAILANI ALAMA IS ONE OF THE BENEFICIARIES, AND AS GUARDIAN OF THE ESTATE OF WILLIAM K. NOTLEY, A MINOR.

NO. 2938.

ARGUED JULY 17, 1953.                    DECIDED JULY 29, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY STAINBACK, J.

The petitioners, trustees under the will and of the estate of Charles Notley, deceased, filed a bill for instructions in the court below praying that they be instructed by the court whether the trust created by the will of Charles Notley, deceased, has terminated and, if so, to whom and in what proportion the trust property should be distributed. Pursuant to stipulation, the first question was briefed and argued before the court below and from the decision of the chancellor that the trust terminated upon the death of the testator's niece, Emma Danford, this interlocutory appeal is taken.

The testator, Charles Notley, a resident of the island of Hawaii, died on May 2, 1902, leaving a will which was duly admitted to probate in the fourth judicial circuit on September 19, 1902.

The testator was survived by his wife, Mary K. Notley,

by four children, namely, William Notley, Charles Notley, Jr., Maria Notley and David Fyfe Notley; Emma Danford, nee Mullinger, a niece of the testator, named in the will also survived the testator.

After bequests of various amounts of money and personal property the testator conveyed the residue of his estate to two trustees, in trust to pay the income therefrom, in equal shares, to his wife, his three children, namely, William, Maria and David Fyfe Notley, his niece Emma Danford, and the children of his remaining son Charles, namely, John K. Notley, Victoria Maria Notley, Lilly Notley and William Notley, the four children of Charles, Jr., taking one sixth of the income while each of the other named children and Emma Danford each took one sixth.

The sixth article of the will provides as follows:

"SIXTH. All the rest, residue and remainder of my estate, real personal or mixed, and wherever situate, I give, devise and bequeath unto the said Thomas Rain Walker and Anthony Lidgate, in trust nevertheless for the uses and purposes herein set forth, that is to say: to pay the rents, issues and profits arising from and out of my said estate in manner following:

A. "One-sixth thereof to my wife Mary K. Notley during the term of her natural life, such payment to be in lieu of her dower right in my estate, and from and after the death of my said wife, the said one-sixth share or part of said income shall be divided among the surviving devisees named in this my will in the shares and proportions hereinafter set forth and limited to each of them.

B. "One-sixth thereof to my son William during the term of his natural life, and from and after the death of my said son William, then to Melisa, the wife of said William, during the term of her natural life; and from

and after the death of the said Melisa, the said one-sixth share or part of said income shall be divided among the surviving devisees share and share alike.

C. "One-sixth thereof until the children of my son Charles Notley Jr. named, John, Victoria Maria, Lilly and William, share and share alike. And I hereby direct my said Trustees not to pay any of said share of the said income unto any of the above named children of my said son Charles Notley, Jr. until such time as each of them, being males, shall arrive at the age of Twenty-one years, and being females, shall arrive at the age of Eighteen years; and that in the meantime and until the happening of such event as to each of said children, I direct my said Trustees to keep said one-sixth share of said income invested in such securities as they or their successors may think proper, and the income, rents, issues or profits thereof shall be divided equally among said children upon the arrival of them at the age of Twenty-one and Eighteen years respectively as hereinbefore limited. And in the event of the death of any of said children before the arriving at the ages aforesaid, or in the event of their death after the arrival at the ages aforesaid, the heirs of such children shall take the share of the child so dying.

D. "One-sixth thereof unto my daughter Maria, the wife of Thomas Hughes, during the term of her natural life, free from all control or liability of the marital rights of any husband.

E. "One-sixth thereof to my son David Fyfe Notley during the term of his natural life, and

F. "One-sixth thereof to my niece Emma Danford, nee Mullinger, during the term of her natural life free from all control or liability of the marital rights of any husband.

G. "And from and after the death of all of my said children and my said niece Emma Danford, nee Mullinger,

I hereby direct my said Trustees or their successors to convey all of my estate among the heirs-at-law of my said children William, Maria, David Fyfe, and my said niece Emma Danford, nee Mullinger, and the children of my said son Charles Notley, Jr., namely:- John, Victoria Maria, Lilly and William, share and share alike.

H. "And I direct, that until the death of all the legatees last named, the income accruing from said trust estate, shall, until such event happen, be paid among the heirs at law of all such as may have died before the death of the survivor of said last named legatees."

The reason the testator did not include his son Charles in his will is stated by our own supreme court in the case involving the construction of the will under consideration entitled *In the Matter of the Will of Charles Notley, Deceased,* 15 Hawaii 435, 457, as follows: "As to Charles, he himself repeatedly indicated sufficient reasons for leaving him out. These were stated by him not only to Mr. Lydgate and Mr. Brown but to his children, William, David and Maria, and to Mr. Andrade. He felt that Charles had disgraced his name by defaulting when employed in the customs house at Hilo, and he had to pay $7000 to clear him. He said that he resigned from the constitutional convention or the Legislature because of the disgrace brought on his name. He blamed Charles for the trouble between himself and his wife. He blamed him for squandering his money. He called him a rascal to Mr. Andrade. He had, as shown above, had difficulties with him at home."

The testator was survived by all the income beneficiaries named in clauses A to F inclusive, namely, his widow, his children (William Notley, Maria Notley Hughes and David Fyfe Notley), William Notley's wife (Melisa Notley), his niece (Emma Mullinger Danford),

and the four children of the testator's son Charles Notley, Jr. (namely, John Notley, Victoria Maria Notley, Lilly Notley and William Notley.) All of the testator's children, his widow, and Melisa (wife of his son William Notley) predeceased his niece (Emma Mullinger Danford) who died on March 18, 1952. All of the children except William Notley died leaving children: Charles Notley, Jr.'s two sons (John and William) predeceased Emma Danford, each leaving children now living; Charles Notley, Jr.'s two daughters (Victoria Maria and Lilly) are still living.

The chancellor decided that the trust terminated upon the death of Emma Danford.

The single question now before the court then is whether by the terms of Charles Notley's will the trust terminated upon the death of the testator's niece or whether the termination must abide the death of the survivor of Victoria Maria Notley Vannatta and Lilly Notley Riess, the present living children of Charles Notley, Jr.

This question seems to depend upon which of two clauses, G or H, determines the termination of the trust. The appellants contend that clause H controls and that therefore the trust has not terminated but must await the death of the last of the children of Charles Notley, Jr.

Appellants' argument, in substance, is that (1) clause G is not designed to establish the time of the termination of the trust but intended merely to define who would be the distributees upon its termination; (2) clause H establishes the termination event as the death "of all the legatees last named"; that this phrase means all the beneficiaries named in clause G, including the children of testator's son Charles Notley, Jr.; and (3) that if a conflict exists between clauses G and H the conflict can be reconciled only by adopting the construction advocated, namely,

the death of all the "beneficiaries named" included the children of testator's son Charles Notley, Jr.; that to do otherwise and hold the lives of the three children specifically named and the niece of the testator measured the trust would lead to absurdity requiring distribution to the heirs of Victoria Maria Notley Vannatta and Lilly Notley Riess who are still alive and do not and cannot have heirs (*nemo est haeres viventis*); and, if there is an irreconciliable conflict between clauses G and H, H must prevail under the canon on construction that under such circumstances the last expression of the testator governs.

The final contention of the appellants is that if it is held that the death of the testator's three children and his niece, Emma Danford, terminates the trust, such termination is in conflict with section A where one sixth of his income is given to his wife during the term of her natural life and she might have survived the children and the niece, and that Melisa (wife of William) who by paragraph B is given income for her natural life might also have survived the children and the niece.

On the other hand, the appellees claim that clause H was not framed or designed as a termination provision, that it contains no language which in any way speaks of termination of the trust or distribution of the corpus; that it is concerned only with the distribution of income during the period of the trust; that *Lidgate* v. *Danford,* 23 Hawaii 317, 323, interpreted clause H as a general provision to regulate and provide for the distribution of income after the death of the original takers of the income covered by clauses D, E and F, in each of which no provision was made for the substitution upon the death of the original beneficiary as has been done by specific provision in the three preceding clauses, A, B and C of article sixth.

Appellees further claim that the clear meaning and

import of the language of clause G reading "And from and after the death of all of my said children and my said niece Emma Danford, nee Mullinger, I hereby direct my said Trustees or their successors to convey all of my estate among" the remaindermen designated in such clause would include the "heirs at law" of the testator's children and niece (William, Maria, David Fyfe and niece Emma Danford) and the "children" of Charles Notley, Jr. (namely, John, Victoria Maria, Lilly and William), and would not include heirs at law of the children of Charles Notley, Jr.; that if the first "and" were not present in the quoted phrase, appellants' contention relative to the heirs at law of Charles Notley, Jr.'s children being remaindermen might have substance; that the two "ands" should not be disregarded; that the preposition "among" has a compound object, namely, "heirs at law" and "children," and not simply "heirs at law." In other words, the language of the will provides with grammatical precision for the distribution in equal shares among (1) the heirs of William, Maria, David Fyfe and Emma Danford and (2) the children of Charles Notley, Jr., namely, John, Victoria Maria, Lilly and William, and thereby precludes any circumstances which call for the distribution "to the heirs of persons yet living."

Perhaps it is some evidence of the intent of the testator to benefit the children of Charles Notley, Jr., rather than the heirs of the children of Charles Notley, Jr., in that paragraph C does not specifically limit the one sixth of the income "for the life" of these children.

In all of the devises of one-sixth income, except that to the children of Charles Notley, Jr. (namely, John, Victoria Maria, Lilly and William), were payable during the term of his or her "natural life."

Again, if we adopt the interpretation that the remain-

dermen are the "heirs" of the testator's children (William, Maria, David Fyfe) and the niece, Emma Danford, and the "children" of Charles Notley, Jr., this would apparently tend to put all the grandchildren of the testator on an equal footing as remaindermen, as the testator well knew that it was very probable that the heirs of the testator's children would be their children, his grandchildren, as are the children of Charles Notley, Jr.

It is elementary that it is the primary function and duty of the courts in the construction of a will to ascertain the intention of a testator as *expressed* in the will. The principles of construction may be regarded merely as guides for ascertaining the testator's intention, having in themselves no force or effect if the testator's intention is otherwise clear.

As stated by Chief Justice Marshall in *Smith* v. *Bell,* 6 Pet. 68, 75 (U. S.), the language being adopted in *Kinney* v. *Robinson,* 30 Hawaii 246, 253: "The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law."

When we examine the language of clause G reading "And from and after the death of all of my said children and my said niece Emma Danford, nee Mullinger, I hereby direct my said Trustees or their successors to convey all of my estate among the heirs-at-law of my said children William, Maria, David Fyfe and my said niece Emma Danford, nee Mullinger, and the children of my son Charles Notley, Jr., namely: John, Victoria Maria, Lilly and William, share and share alike" it would seem that the testator has expressed his intent that the trust should be terminated and distributed upon the death of the survivor of his three children and his niece. The only attempt to dis-

pute the clearness of the language is an artificial construction that the words "from and after" do not fix a time, do not mean "upon," but constitute "an indefinite phrase which leaves to other provision of the will the fixing of the time of distribution." To the layman it would seem clear that this paragraph definitely fixes the time of distribution upon the death of the last survivor of his children and his niece. Any other construction is forced, strained and artificial and could only be justified by a clear showing that the testator did not mean exactly what he said. Appellants, however, do not offer or suggest what better meaning than "upon" could possibly be ascribed to the words. The conveyance of the estate is not a continuous procedure as a payment of income over a period of years would be, but a single act transferring title to the remaindermen. In construing the words "from and after the passage of this Act," the Pennsylvania court in *Commonwealth* v. *Ashe*, 15 A. (2d) 409, 411, stated: "* * * the Act of May 28, 1937, supra, specifies that it shall be in force 'from and after the passage of this act', which is the equivalent of the expression, 'This Act shall become effective immediately upon final enactment.' "

To offset this clear, explicit directive, appellants claim that paragraph H fixes the time of distribution, but an examination of the language of paragraph H discloses it deals only with income accruing from the estate and how it shall be disposed of in case one of the named beneficiaries of the income dies during the period of the existence of the trust and has nothing whatever to do with the manner or time of the distribution unless by implication. Nor would the fact that Melisa and the widow might have survived the children of the testator and the niece have presented any insurmountable difficulty in terminating the trust.

A clear, precise coverage of the termination by clause G will not be controlled or modified by a doubtful or ambiguous provision found elsewhere even though such clause may occur later in the will. (57 Am. Jur., Wills § 1128, p. 722; Page, Wills, vol. 2, § 932, p. 872; *Robinson* v. *Aheong,* 13 Haw. 196, 200; *Hamilton* v. *Rogers,* 38 Ohio St. 242.)

In *Hamilton* v. *Rogers,* 38 Ohio St. 242, 245, 257, 258, the instrument had a provision terminating a trust upon the final cessation of certain annuities and a direction for final distribution; such distribution was not delayed because the testator had in another provision of his will inserted a clause that "Not desiring that any of my grandchildren should become destitute, I hereby authorize and empower my said trustees upon the death of the parents of any such grandchild, or their inability to support them, to provide for a prudent and economical support of any such grandchild * * *." When the trustees resisted a distribution claiming it was their duty to provide for any of the testator's grandchildren who might at any time become destitute after the final cessation of the annuities mentioned in the will, the court said: "We regard as wholly untenable the claim of the trustee that no distribution can be made so long as there may be grandchildren now living, or hereafter to be born, who may, by possibility, at some time become destitute. * * * It is clear to our minds that this provision as to the support of destitute grandchildren was intended to apply only during such time as the estate should remain in the hands of the trustee and pending its distribution, and was not intended to control or limit the time fixed for such distribution by item 17 of the will."

See also *Thornhill* v. *Hall,* 2 Cl. & Fin. 22, 36, 6 English Reprint 1065, 1070, which contains the following statement: "I hold it to be a rule that admits of no exception, in the construction of written instruments, that, where one

interest is given, where one estate is conveyed—where one benefit is bestowed in one part of an instrument by terms clear, unambiguous, liable to no doubt, clouded by no obscurity, by terms upon which, if they stood alone, no man breathing, be he lawyer or be he layman, could entertain a doubt—in order to reverse that opinion, to which the terms would of themselves and standing alone have led, it is not sufficient that you should raise a mist; it is not sufficient that you should create a doubt; it is not sufficient that you should show a possibility; it is not even sufficient that you should deal in probabilities, but you must show something in another part of that instrument which is as decisive the one way as the other terms were decisive the other way; and that the interest first given cannot be taken away either by *tacitum* or by *dubium,* or by *possibile* or even by *probabile,* but that it must be taken away, and can only be taken away, by *expressum et certum.*"

We hold that the provision of clause G of section sixth clearly and definitely fixes the time for termination of the trust and for the conveyance to the remaindermen of the corpus.

We make no finding upon the method of distribution of the estate (except possibly by "implication") as that question is not now before this court.

The decision of the chancellor that the trust created under the will of Charles Notley terminated March 18, 1952, upon the death of Emma Mullinger Danford is affirmed.

*F. D. Padgett* (*Robertson, Castle & Anthony* with him on the brief) for Helen K. Alama, appellant.

*E. C. Peters,* for petitioners-appellees, filed no brief but argued.

*E. Z. Buck* (*Lewis, Buck & Saunders* on the brief) for appellees Melissa H. Vickery, Helen N. V. Joseph, Nancy

Kerr, Harriet K. Notley, Jasmine N. Lau, Gwendolyn L. Notley, Llewellyn K. Notley, Robert C. K. Notley and William K. Notley.

*C. E. Cassidy* (*Pratt, Tavares & Cassidy* on the brief) for appellees Emma V., Clarence M., Charles E. and Wm. N. Hughes.

*M. Marumoto* (also on the brief) for appellees Wm. Eric Danford, Jas. Sharpe Danford and Henry Vincent Danford.

*A. M. Felix,* guardian ad litem for John, Victoria Maria, Lilly and Wm. Notley, et als., filed a brief, was present, but did not argue.

*K. B. Dawson* for Victoria Maria K. Vannatta, nee Notley, Lilly Riess, nee Notley, appellees, filed a brief but did not appear.

*R. J. O'Brien,* for appellees Henry T. Hughes and Angela Marie Hughes, filed a brief but did not appear.